**Willard CHILDERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 52A05–9408–CR–325.

Supreme Court of Indiana.

Aug. 1, 1996.

Transfer Denied Aug. 1, 1996.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana, James A. Joven, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellee.

### DISSENT FROM DENIAL OF PETITION TO TRANSFER

DeBRULER, Justice.

Appellant Childers in November, 1992, received a thirty (30) year sentence pursuant to a plea agreement. Eight (8) of the thirty (30) were suspended. While awaiting delivery to the state system, appellant walked away from jail. He was convicted of that escape and in January, 1993 was given an eight (8) year sentence to run consecutive to the previous thirty.

In April, 1993, the State filed a petition to revoke the suspension of the eight year portion of the thirty year sentence based upon appellant's conduct in walking away and escaping from jail. Appellant was brought from prison, a brief heated exchange occurred between appellant, the trial court, and the prosecutor during which appellant threw a microphone and yelled obscenities, and following that brief proceeding before the court, on May 20, 1993, the trial court signed an order revoking the eight year suspension.

In June, 1993, appellant filed a praecipe to commence an appeal of the order, and the State Public Defender entered an appearance for appellant.

On August 26, 1993, the trial court, without any motion therefor by appellant, set aside the order revoking the eight year suspension on his own initiative without stating his reasons. In February 1994, another proceeding was held on the State's petition to revoke the eight year suspension based upon the same escape in walking away from jail back in November of 1992. On February 22, 1994, the trial court again, based upon the escape from jail, revoked the suspension of the eight year portion of the thirty year sentence.

This is the appeal of the February 22, 1994 order. The Court of Appeals affirmed. *Childers v. State,* 656 N.E.2d 514 (Ind.App. 1995). This court has denied transfer, and to that order I respectfully dissent.

### Double Jeopardy and Revocation Hearings

Appellant argues that being subjected to two separate revocation hearings violates the Double Jeopardy Clause's prohibition against successive prosecutions for the same offense. The Court of Appeals upheld the trial court's February 1994 revocation of his suspended sentence because there was, in its opinion, no double jeopardy violation. Relying on some Indiana case law and a single right to counsel case in the United States Supreme Court, it

concluded that the violation of probation or terms of a suspended sentence is not a criminal offense under the Double Jeopardy Clause of the Fifth Amendment.[1] Unfortunately, the federal cases on this issue belie the Court of Appeals' conclusion.

Though the case law often only refers to three protections provided by the Double Jeopardy Clause of the Fifth Amendment, it actually creates six protections. It protects an accused from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, (3) multiple punishments for the same offense, (4) reprosecution for the same offense after a mistrial, (5) reprosecution for the same offense after a dismissal, and (6) entails the doctrine of collateral estoppel. *North Carolina v. Pearce,* 395 U.S. 711, 716–17, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see also* J. Dressler, *Understanding Criminal Procedure,* ch. 32, (1991). It is enforceable against the states through the Fourteenth Amendment. *Id.* The Double Jeopardy Clause, however, does not prevent a criminal defendant from later being subject to a civil sanction for the same offense nor does it prevent one who is subject to a civil sanction from later being prosecuted and punished for the same conduct that gave rise to the civil sanction. *Helvering v. Mitchell,* 303 U.S. 391, 398–400, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

However, some civil sanctions may be so severe as to constitute punishment for Double Jeopardy purposes and that the proceedings for those sanctions are therefore penal. Whether a given sanction or proceeding is subject to the Double Jeopardy Clause is not determined by the State's characterization of it as either criminal or civil. *United States v. Halper,* 490 U.S. 435, 446–48, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989); *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, ———–———, 114 S.Ct. 1937, 1944–5, 128 L.Ed.2d 767 (1994).

Though the blurring of the "criminal-civil" distinction is plain in the cases of various fines and taxes being used essentially as punishments for various offenses, the most analogous case to the present case is *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). In *Breed,* the Supreme Court held that double jeopardy protection applies to state juvenile proceedings. In so holding, the Court looked beyond the label of the juvenile proceeding to its essence:

> *[I]n terms of potential consequences,* there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of "anxiety and insecurity" in a juvenile, and imposes a "heavy personal strain."

*Breed,* 421 U.S. at 529–31, 95 S.Ct. at 1786 (citations omitted and emphasis added). Even more to the point, *Breed* evinces the Court's willingness to assess a proceeding's actual use, rather than the State's characterization of that proceeding, in double jeopardy analysis:

> Although the juvenile-court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by anti-social conduct, our decisions in recent years have recognized that there is a gap between the originally benign conception of that system and its realities.

*Breed,* 421 U.S. at 528, 95 S.Ct. at 1785. The court then linked the reality of the system with the accused's, in this case a juvenile's, interest in finality:

> We believe that it is simply too late in the day to conclude ... that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in ju-

---

1. See *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Ashba v. State,* 570 N.E.2d 937 (1991), among others cited by the Court of Appeals in *Childers v. State,* 656 N.E.2d 514 (Ind.App.1995).

venile proceedings, requires that courts eschew "the 'civil' label-of-convenience which has been attached to juvenile proceedings," and that "the juvenile process ... be candidly appraised."

*Breed,* 421 U.S. at 529, 95 S.Ct. at 1785 (citations omitted). Because of the essential similarities between such juvenile proceedings and probation revocation hearings, I believe that probation revocation hearings merit the same candid appraisal. Whatever their historical origins were, both the juvenile system and the probation system are now integral parts of the criminal justice system. Thus, though a probationer may already be convicted of a crime, he faces the risk of losing his restricted freedom. As the court in *Breed* noted,

> [a]lthough the constitutional language, "jeopardy of life or limb," suggests proceedings in which only the most serious penalties can be imposed, the Clause has long been construed to mean something far broader than its literal language. At the same time, however, we have held that the risk to which the clause refers is not present in proceedings that are not "*essentially* criminal."

*Breed,* 421 U.S. at 528, 95 S.Ct. at 1785 (citations omitted and emphasis added). Just as an accused facing an ordinary criminal trial faces the prospect of losing his freedom, so too does the probationer face his own risks:

> ... it is evident that one "risk" a probationer is subjected to upon the filing of a motion to revoke probation and a hearing on that motion is the revocation of the probation and the immediate imposition of a penalty previously assessed. Regardless of what label we attach to the proceeding, the consequence is the same. The probationer faces the "risk" of losing his liberty.

*Davenport v. State,* 574 S.W.2d 73, 77 (1978) (J. Phillips, dissenting). It should also be noted that the burden of proof in the juvenile proceeding at issue in *Breed* was a preponderance of the evidence standard just as it is in Indiana probation revocation hearings. See *Davenport* at 77. As the Supreme Court itself has noted, "... [I]t is the purposes actually served by the sanction in question,

not the underlying nature of the proceeding giving rise to the sanction that must be evaluated." *Halper,* 490 U.S. at 442–44, 109 S.Ct. at 1899. Thus, one can only conclude that the essential similarities between this state's probation revocation hearings and California's juvenile hearings at issue in *Breed* subject appellant's cause to the double jeopardy protection against successive prosecutions.

Believing that the constitutional protection against double jeopardy protects against successive revocation proceedings based upon the same alleged misconduct in the same case, I turn to the question of whether appellant's second hearing on the petition to revoke was prohibited. As noted, the double jeopardy doctrine prohibits a court from declaring a mistrial over the objection of the defendant and in the absence of manifest necessity for such action. *Patterson v. State,* 495 N.E.2d 714 (Ind.1986), *on remand,* 532 N.E.2d 604 (Ind.1988). Here, no mistrial was ordered. The trial court's *sua sponte* order setting aside the eight year suspension, however, is essentially the equivalent of one. The proceeding was ongoing, with the initial steps being taken to appeal the order. A successful appeal of that order, on the basis of a lack of formal evidence in the record to support it, would have foreclosed a retrial. The State is entitled to only one fair opportunity to present its evidence that a particular sentence is warranted. *Schiro v. Farley,* 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994). There was neither a manifest necessity for the *sua sponte* order nor an opportunity for appellant to object to it. Furthermore, appellant had not moved for such an order and thus had not waived his double jeopardy protection. Accordingly, I would hold in this case that the primary evil to be guarded against by the double jeopardy clause occurred when appellant was subjected the second time to revocation of suspended sentence proceedings in the same case based upon the same misconduct, namely, his escape from jail.