Anthony **FIELDS**, Appellant (Defendant),

v.

**STATE of Indiana**, Appellee (Plaintiff).

No. 49S02–9705–CR–301.

Supreme Court of Indiana.

May 13, 1997.

---

Steven R. Jacobs, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SELBY, Justice.

Appellant was convicted, after court trial, of Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator, as a class A misdemeanor. The trial judge sentenced Appellant to 365 days with 265 days suspended and suspended his driver's license for two years. The Court of Appeals reversed on the grounds that the evidence was insufficient to support the conviction. The State sought transfer, arguing that the Court of Appeals misconstrued the law and that the evidence was sufficient to support the conviction. We grant transfer and, to promote clarity, separate the claim into two issues. 1) Was there sufficient evidence that Appellant's suspension as a habitual traffic violator was valid? 2) Was there sufficient evidence that Appellant knew or reasonably could have known of his suspension as a habitual traffic violator?

FACTS

On September 10, 1994, Officer Akers observed a motorcycle driver "rev" the motor and "squeal out" down the street. A child, approximately age five to seven, was a passenger. Because this behavior constituted reckless driving which was a danger to the public and the child, Officer Akers followed the motorcycle. When the motorcycle stopped, Officer Akers approached, and Appellant identified himself as the driver. Appellant was unable to produce a license. When Officer Akers ran a computer check on Appellant, he found that Appellant's license had been suspended as a habitual traffic violator. Thus, Appellant was arrested for Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator.

EVIDENCE PRESENTED AT TRIAL

At trial, the State first called Officer Akers to testify as to the events on the date of the offense. The State then submitted into evidence a habitual traffic violator packet, regarding Appellant, certified from the Bureau of Motor Vehicles (hereinafter "the Bureau"). This packet included Appellant's official driver record, copies of two notices of suspension of license as a habitual traffic violator, the abstracts of the three traffic tickets for the offenses upon which the suspension was based, and an order from 1987 regarding a charge of Driving a Motor Vehicle with No Operators License. Appellant testified on his own behalf.

DISCUSSION

Appellant challenges the sufficiency of the evidence at trial to support his conviction for Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator. We find sufficient evidence of probative value to support his conviction.

"In reviewing the sufficiency of the evidence, we neither re-weigh the evidence nor judge the credibility of the witnesses." *Vance v. State*, 640 N.E.2d 51, 57 (Ind.1994). "[W]e look only to the probative evidence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt." *Frias v. State*, 547 N.E.2d 809, 813–14 (Ind.1989). "If there is substantial evidence of probative value to support the conviction it will not be set aside." *Brown v. State*, 677 N.E.2d 517, 519 (Ind.1997).

> There are three elements of the offense of operating a motor vehicle while suspended as an habitual violator of traffic laws. They are: 1) operating a motor vehicle; 2) while driving privileges are suspended ...; and 3) a showing that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender.

*Stanek v. State*, 519 N.E.2d 1263, 1266 (Ind. Ct.App.1988). "Before the Bureau may suspend a driver's license as a habitual traffic violator, it must mail a notice of suspension of the driver's license to the driver's last known address." *Brown*, 677 N.E.2d at 518; *see* INDIANA CODE § 9–30–10–5.

I.  Valid Suspension of License

■ Appellant contests the validity of the suspension of his license by claiming that no notice of suspension was mailed to his last known address. Appellant argues that the record contains no evidence that he lived at either of the addresses, listed in his driving record, to which the Bureau mailed notice. The trial judge found there was sufficient evidence that, 1) at the time of the suspension, Appellant lived at one of the addresses to which notice was mailed, 2) Appellant failed to · keep the Bureau advised of his address, and 3) the Bureau made every effort to notify Appellant at the available addresses. We find that whether or not Appellant lived at one of the addresses to which the Bureau sent notice, the record contains sufficient evidence that the Bureau followed the proper procedure to validly suspend Appellant's license.

■ "If there is no valid suspension, then a driver cannot lawfully be convicted of Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator." *Brown*, 677 N.E.2d at 519. To ensure a valid suspension, the Bureau must send notice to the driver's last known address. *Id.* Proof of mailing "is an evidentiary prerequisite to establishing that the suspension is valid ..." *Collins v. State*, 567 N.E.2d 798, 800 (Ind. 1991). In *Brown* we held that:

> The Bureau may rely on the address which was last provided by the driver. It has no obligation to search through its files and surmise, based on papers therein, that a driver has a new address. Rather, the driver is required to provide it with an updated address. If the driver has not, the Bureau may assume the address last given is the correct address to which to send a notice.

*Brown*, 677 N.E.2d at 519.

The record contains sufficient evidence that Appellant's license was validly suspended. As an Indiana resident driving on Indiana's roads on July 31, 1989, Appellant was required to notify the Bureau of his current address. I.C. §§ 9–24–1–1, 9–24–13–4(1). Also, as a holder of an Indiana identification card, Appellant was required to inform the Bureau of his current address.[1] I.C. § 9–24–16–7. Regardless of where Appellant actually lived, he failed to keep the Bureau informed of his current address. On November 22, 1989, the Bureau made every effort to notify Appellant of the suspension of his license by mailing notice to the two addresses listed in Appellant's official driving

1.  Appellant's driving record contains a notation that Appellant renewed his identification card

around two months before the Bureau sent out his notice of suspension.

record.[2] Appellant's driving record contains proof that the notice of suspension was mailed to these two different addresses.[3] This is sufficient evidence upon which the judge could find that the Bureau met the requirement of mailing notice to the last known address.

## II. Knowledge of Suspension of License

■ Appellant claims there is no evidence in the record that he knew or should have known that his license was suspended as a habitual traffic violator. As stated above, the trial judge found there was sufficient evidence that, at the time of the suspension, Appellant lived at one of the addresses to which notice was mailed. We find that there was sufficient evidence that Appellant knew or reasonably could have known of the suspension of his license as a habitual traffic violator.

2. There is some confusion in the record as to where the Bureau obtained these addresses. Appellant testified he never lived at one of the addresses. The second address, 233 N. Parker, is similar to the address, 2330 N. Parker, which Appellant testified to living at on November 22, 1989. The traffic ticket for the offense which triggered the suspension of Appellant's license as a habitual violator contains the address 2230 Parker. Further, Officer Akers testified that on September 10, 1994 Appellant lived at 233 N. Parker. This could give rise to several inferences, among them, either 1) Appellant correctly notified the Bureau when he renewed his identification card that he lived at 233 N. Parker, or 2) Appellant mistakenly notified the Bureau that he lived at 233 N. Parker, or 3) the Bureau somehow obtained an erroneous address. In any event, Appellant was under an obligation to inform the Bureau of his proper address.

3. One section of the driving record lists the addresses to which notice was sent by number. The notices of suspension as a habitual traffic violator were sent to addresses one and two. Another section lists address one as 1425 North Alabama and address two as 233 N. Parker St., with the respective zip codes.

4. In *Keihn* this Court ruled that a culpable mental state was required in order to convict a driver of operating a motor vehicle after license suspended. *State v. Keihn*, 542 N.E.2d 963 (Ind. 1989). *Keihn* approved *Burdine* and *Stanek* which required that, "The defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be a habitual traffic offender." *Keihn*, 542 N.E.2d at 964, 965, 967; *Stanek*, 519 N.E.2d at 1266; *Burdine v. State*, 510

■ The third element that the State must prove to convict a driver of Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator is that the driver knew or reasonably could have known that his license was suspended as a habitual traffic violator.[4] *Stanek*, 519 N.E.2d at 1266; *see State v. Keihn*, 542 N.E.2d 963 (Ind. 1989). The proof of mailing of a notice of suspension of license as a habitual traffic violator to the driver's last known address suffices to show that the driver knew or reasonably could have known.[5] *Keihn*, 542 N.E.2d at 968; *Cruite v. State*, 641 N.E.2d 1264, 1265–66 (Ind.1994). Proof of mailing the notice need not be shown to prove a driver knew or reasonably could have known his license was suspended as a habitual traffic violator if other evidence shows the driver knew or reasonably could have known.[6] *Keihn*, 542 N.E.2d at 969.

N.E.2d 1385, 1389 (Ind.Ct.App.1987). *Keihn* did not explicitly clarify whether an actual knowledge requirement or the *Burdine* requirement applied. We now clarify that the required culpable mental state is that the driver "knew or reasonably could have known."

We also note that in our recent opinion, *Brown*, the knowledge issue was not raised on appeal. *Brown v. State*, 677 N.E.2d 517 (Ind. 1997). Both parties agreed upon the requirement that the Appellant "knew or should have known"—a requirement synonymous with the requirement that the driver "knew or reasonably could have known." Thus, there was no discussion of the issue clarified here.

5. Proof of mailing of notice of suspension of license as a habitual traffic violator to the driver's last known address does not, however, raise a presumption that a driver knew or reasonably could have known his license was suspended, and the trier of fact need not find the driver knew or reasonably could have known based on such evidence. *See Collins*, 567 N.E.2d at 801.

6. *Keihn* stands for this proposition that proof of mailing of notice is not necessary to prove a driver knew or reasonably could have known his license was suspended as a habitual traffic violator, the third element the State must show. *Keihn*, 542 N.E.2d at 969. Proof of mailing of notice is, however, necessary to sustain a conviction, because it is necessary to prove that the suspension was valid, the second element the State must show. *Brown*, 677 N.E.2d at 519; *Collins*, 567 N.E.2d at 800. To the extent that *McKeown v. State*, 601 N.E.2d 462, 466 (Ind.Ct. App.1992) states otherwise, it is hereby overruled.

The record contains evidence that on November 22, 1989 Appellant lived at one address to which the Bureau mailed notice and was able to pick up mail from the other address to which the Bureau mailed notice. The trial judge could reasonably find that Appellant lived at 233 North Parker. Officer Akers testified that Appellant lived at 233 North Parker in 1994 and the Bureau had that same address on November 22, 1989, only two months after Appellant renewed his Indiana identification card. Furthermore, Appellant implied that, while 1425 North Alabama was never his legal address, his wife, at that time, did live there in 1989. This evidence, while not overwhelming, is sufficient to show that Appellant knew or reasonably could have known his license was suspended as a habitual violator. While the record does contain evidence contrary to these findings [7], we decline to re-weigh the evidence or judge the credibility of the witnesses.

CONCLUSION

The conviction is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

[7]. For instance, Appellant testified he lived at 2330 Parker (not 233 North Parker), and the July 31, 1989 ticket abstract contained the address 2230 Parker. Also, Appellant did not outright state that his wife lived at 1425 North Alabama. He testified, "Um, let's see ... okay, it was.... I think it was 14 ... I moved, me and my wife, we moved and we had separated from one address to the other." Furthermore, Appellant denied ever having seen the notice of suspension as a habitual traffic violator or knowing that his license had been suspended.