**Troy L. ASHCRAFT, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 69A05–9705–CR–179.

Court of Appeals of Indiana.

April 23, 1998.

---

1. The current attorney fee provision now appears at I.C. 31–15–10–1 (Burns Code Ed.Repl.1997), effective July 1, 1997.

Mark E. Jones, Batesville, for Appellant–Defendant.

Jeffrey A. Modisett, Indiana Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Troy L. Ashcraft (Ashcraft), appeals the trial court's determination that he violated the terms of his probation by committing the offense of Operating a Motor Vehicle While Suspended.[1]

We reverse.

Appellant presents two issues, which we restate as follows:

(1) Whether sufficient evidence supported the probation revocation.

(2) Whether the trial court erred by admitting hearsay testimony regarding Ashcraft's license suspension.

Because the State did not present any evidence that the Bureau of Motor Vehicles (BMV) sent Ashcraft written notice of his suspension, insufficient evidence supported the trial court's finding that Ashcraft committed the offense of Operating a Motor Vehicle While Suspended. Therefore, the trial court's probation revocation order, which was premised upon its finding that Ashcraft committed the offense, was improper. Although

1. I.C. 9–24–18–5 (Burns Code Ed.Repl.1997).

we reverse the decision on sufficiency grounds, we take the opportunity to note that Ashcraft's statement to police, indicating that he was aware of his suspension, was not hearsay, and was properly admitted as a Statement By a Party Opponent under Ind. Evid.Rule 801(d)(2).

On October 24, 1996, Deputy Lee Matthews of the Ripley County Sheriff's Department observed Ashcraft, while still on probation for two previous theft convictions, driving a motor vehicle. One condition of Ashcraft's probation was that he would not commit another criminal offense. Because Matthews was previously informed by Officer Smith that Ashcraft's driving privileges were currently suspended, he forced Ashcraft to stop. When Matthews asked Ashcraft if he possessed a driver's license, Ashcraft initially responded "I don't have one". He then paused for a moment and stated "I, I should be able to get em back here real quick." Record at 37. Matthews radioed in to the Sheriff's Department where they confirmed that Ashcraft's license was suspended, and that the active suspension began January 8, 1993. Matthews did not place Ashcraft under arrest, but instead issued him a citation. During cross-examination of Matthews at the revocation hearing, the following exchange took place:

"Q. Did, did you get any information as to when notices were sent to my client or what addresses they were sent to or anything like that from your dispatcher?

A. No, sir, that's not available to us." Record at 39.

During cross-examination, Officer Smith testified:

"Q. O.k. Do you know anything about, um, when notices were sent to him, why he was suspended, or if he received the notices?

A. No, sir." Record at 31–32.

On October 29, 1996, Matthews informed the Osgood Town Marshall, Charles Snelling (Snelling), that he cited Ashcraft for driving while suspended just a couple of days earlier. On October 30, Snelling observed Ashcraft drive southbound on 421, and pull into the

Jay–C parking lot. After detaining Ashcraft, the dispatcher notified Snelling that Ashcraft's license had been suspended. Snelling observed that Ashcraft was still in possession of the citation issued by Matthews. Snelling arrested Ashcraft and transported him to jail. During the cross-examination, Snelling provided the following testimony:

"Q. And again, you had no information as to why my client was suspended ...

A. No, sir.

Q. ... Is that correct? You had no information as to whether or not he'd been notified of the suspension?

A. No, sir.

Q. Or if he had been notified, when notice was sent or when anything like that?

A. No, sir." Record at 48.

During cross-examination of the State's first witness, Ashcraft asked if he could make a continuing objection to all hearsay testimony, and the court granted his request. Smith, Matthews and Snelling were the only witnesses to testify at the hearing. The State failed to produce BMV records indicating that notice of suspension was mailed, nor did it present any evidence as to why Ashcraft's license was suspended. Nonetheless, the trial court determined that Ashcraft violated the terms of his probation by driving a vehicle while suspended on October 24, 1996 and October 30, 1996.

▪ The State was only required to prove that Ashcraft violated the conditions of his probation by a preponderance of the evidence. See Childers v. State (1996) Ind., 668 N.E.2d 1216, 1218. However, because the State presented no evidence that notice of suspension was mailed, insufficient evidence supported the trial court's finding that Ashcraft was guilty of the alleged probation violation of Operating a Motor Vehicle While Suspended.

In Fields v. State (1997) Ind., 679 N.E.2d 898, the Indiana Supreme Court held that a driver, whose license was suspended as a result of his status as an habitual traffic violator, could not be convicted of Operating a Motor Vehicle While Suspended absent

proof that notice of suspension was mailed to the driver's last known address:

"There are three elements of the offense of operating a motor vehicle while suspended as an habitual violator of traffic laws. They are: 1) operating a motor vehicle; 2) while driving privileges are suspended ...; and 3) a showing that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of his having been determined to be an habitual traffic offender.... If there is no valid suspension, then a driver cannot lawfully be convicted of Operating a Motor Vehicle After License Suspended as an Habitual Traffic Violator. (Citation omitted). To ensure a valid suspension, the Bureau must send notice to the driver's last known address." Id. at 900.

Previous to Fields, this court, in relying upon State v. Keihn (1989) Ind., 542 N.E.2d 963, 968, held that actual knowledge of a suspension was sufficient to sustain a conviction for Operating a Motor Vehicle While Suspended under I.C. 9–1–4–52.[2] McKeown v. State (1990) Ind.App., 556 N.E.2d 3, 4–5, trans. denied. The license suspensions in both Keihn and McKeown were for reasons other than an habitual violator determination. Nonetheless, the Fields court, in reviewing a conviction for Operating a Motor Vehicle While Suspended as an habitual violator, overturned McKeown, and held that knowledge of a suspension was not sufficient to support a conviction for Operating a Motor Vehicle While Suspended:

"Proof of mailing of notice is, however, necessary to sustain a conviction, because it is necessary to prove that the suspension was valid, the second element the state must show. (Citation omitted) To the extent that McKeown v. State, 601 N.E.2d 462, 466 (Ind.Ct.App.1992) states otherwise, it is hereby overruled." Fields, supra, 679 N.E.2d at 901 n. 6.

We must conclude that, in overruling McKeown, the Court was aware that the suspensions in Keihn and McKeown were predicated upon reasons other than an habitual violator determination. As such, Fields makes it clear that, regardless of the genesis

---

**2.** For present provision, see I.C. 9–24–18–5 (Burns Code Ed.Repl.1997).

of a suspension, proof of mailing of notice of suspension is required to support a conviction for Operating a Motor Vehicle While Suspended.[3]

Additionally, prior to *Fields*, proof of mailing was not considered to be an element of the offense of Operating a Motor Vehicle While Suspended. Rather, it was considered only as an evidentiary prerequisite to establishing validity of the suspension. *See Banks v. State* (1991) Ind., 567 N.E.2d 1126, 1128; *Chambers v. State* (1989) Ind.App., 547 N.E.2d 301, 302; and *Kinkade v. State* (1989) Ind.App., 537 N.E.2d 541, 544.

However, *Fields* contains a rather dramatic inconsistency regarding whether the mailing of notice should be considered an actual element of the offense of Operating a Motor Vehicle While Suspended. *Fields* restated the old maxim that "[p]roof of mailing 'is an evidentiary prerequisite to establishing that the suspension is valid ...[.]' " *Fields, supra*, 679 N.E.2d at 900. However, *Fields* also held that "[t]o ensure a valid suspension, the Bureau must send notice to the driver's last known address ... proof of mailing of notice is ... necessary to sustain a conviction, because it is necessary to prove that the suspension was valid, the second element the State must show." *Id.* at 900–01.

■ We read the latter language as necessitating the conclusion that proof of mailing is an element of the offense of Operating a Motor Vehicle While Suspended. *Fields* unequivocally holds that the existence of a suspension is an element of the offense of Operating a Motor Vehicle While Suspended. Therefore, proof of mailing must be more than just an evidentiary prerequisite because, absent proof of mailing, a suspension is invalid. In other words, absent proof of mailing, *the suspension never existed.*

The State cannot sustain a conviction for Operating a Vehicle While Suspended if premised upon an invalid suspension. Unless notice is sent, suspensions are invalid. Therefore, because proof of mailing is the only way to establish the required notice, it must be considered to be an element of the crime itself. Accordingly, continued application of the pre-*Fields* position that mailing is an evidentiary requirement is mere surplusage. *See Pebley v. State* (1997) Ind.App., 686 N.E.2d 168, 170 (evidentiary prerequisite to conviction is proof of mailing of notice of suspension).

We conclude that *Pebley* can only be reconciled with *Fields* if the court interpreted the phrase "[t]o ensure a valid suspension, the Bureau must send notice ..." to mean that proof of mailing was merely an evidentiary prerequisite to proving notice. To that

---

**3.** The BMV may validly suspend a driver's license for a number of reasons. The general statutory prohibition against Operating a Motor Vehicle While Suspended, I.C. 9–24–18–5, does not refer to specific reasons for the suspension of driving privileges. It merely states that a person who operates a motor vehicle upon a highway while the person's driving privilege, license, or permit is suspended or revoked commits the offense.

However, the defendant in *Fields* was charged with operating a motor vehicle *as an habitual traffic offender*. In other words, his license was suspended for the specific reason that he was previously determined to be an habitual traffic violator. The statute creating the status of habitual violator, I.C. 9–30–10–4 (Burns Code Ed. Repl.1997), is codified under the habitual violator chapter. The habitual violator chapter also includes a specific notice provision statute, I.C. 9–30–10–5 (Burns Code Ed.Repl.1997), which requires that notice be sent whenever it appears from the BMV records that a person's driving record makes the person an habitual violator,

and informing that person that his license will be suspended in thirty days. No such notice statute appears in the general penalty provision chapter which contains the statutory prohibition against Operating a Motor Vehicle While Suspended.

Therefore, before *Fields*, it could have been reasonably maintained that, while mailing of notice was required to sustain a conviction for Operating a Motor Vehicle While Suspended *as an habitual traffic violator*, if the suspension was predicated upon grounds other than an habitual determination, a conviction only required proof of actual knowledge of the suspension. Logic permitted such an inference because certain traffic offenses, standing alone, may not merit automatic suspension. However, an accumulation of those same offenses, within a particular time frame, results in a suspension under the habitual violator statute. Therefore, it was arguable that the concerns prompting the statutory notice requirement for suspensions arising from an habitual violator determination may not have existed, to the same extent, when the suspension arose from a single offense meriting the suspension of driving privileges.

extent, we disagree with *Pebley*, and hold that proof of mailing is an element of the offense of Operating a Motor Vehicle While Suspended.[4]

In the instant case, the State presented *no* evidence that Ashcraft was ever mailed a notice of suspension. Because proof of mailing is required to sustain a conviction for Operating a Motor Vehicle While Suspended, insufficient proof supported the trial court's determination that Ashcraft violated his probation.

Finally, Ashcraft contends the trial court erred by improperly admitting hearsay testimony in the context of a probation revocation hearing. During a traffic stop, Officer Matthews asked Ashcraft if he had his driver's license. Ashcraft replied by stating: "I don't have one" and "I, I should be able to get em back here real quick." Record at 37. These statements alone may have been sufficient to prove actual knowledge of a suspension, and were admissible as non-hearsay under Evid.R. 801(d)(2)(A) as a Statement by a Party Opponent. *See Neal v. State* (1995) Ind., 659 N.E.2d 122, 124 n. 1. But, as noted, establishment of knowledge will not suffice for conviction.

The judgment of the trial court is reversed and the cause is remanded with instructions to vacate the revocation of probation.

FRIEDLANDER and KIRSCH, JJ., concur.

---

4. To state that mailing of notice is a necessary element of the offense itself is to state also that it is an evidentiary prerequisite. Until the decision in *Fields*, however, the converse was not true.