Richard V. TAYLOR, Appellant
(Defendant below ),

v.

STATE of Indiana, Appellee
(Plaintiff below ).

No. 71S00–9806–CR–328.

Supreme Court of Indiana.

May 27, 1999.

Donald W. Pagos, Michigan City, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Stephen K. Tesmer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted Richard V. Taylor of murder and criminal recklessness as a Class D felony. He was sentenced to consecutive sentences of sixty years and two years, respectively. In this direct appeal Taylor raises four issues for our review: (1) whether the trial court erred in excluding as hearsay statements made by him at the time of his arrest; (2) whether the trial court erred by admitting opinion testimony allegedly beyond the scope of the expertise of the pathologist witness; (3) whether the State sufficiently negated his claim of self-defense; and (4) whether the trial court properly imposed consecutive sentences. We affirm the trial court.

### Factual and Procedural Background

Shortly after Steve Gavin left an automobile parts store, employees of the store and a nearby business heard several shots and rushed outside to find that Gavin had been shot. They saw a figure, clad in black and wearing a ski mask, running from the scene with a gun. In addition to the testimony of these employees, William Karn testified that he was driving nearby, heard what he thought were "firecrackers," looked out his car window and saw "somebody with a black mask on standing over another person shooting him." John Galloway was also driving near the scene of the shooting when he heard gunshots, saw a man running from the scene while taking off a black knit "hat" or "mask." Galloway pursued the figure. After telling Galloway three times to "get the hell out of here," the man shot twice at Galloway from a range of sixty to seventy yards. The figure

continued running, tossed the gun over a fence, was soon apprehended by police, and turned out to be Taylor.

Police and emergency personnel responded to the scene and attempted to treat Gavin's injuries. As they removed Gavin's coat and shirts, they found a gun tucked in his pants. The gun's fully loaded magazine was found in Gavin's pocket.[1] A police officer testified that the magazine "appear[ed] to have been struck on the side with a projectile which collapsed [its] frame." Although the officer observed a "small hole in the pocket area which protrudes through the lining into the inner cavity of the jacket itself," there was no hole in the exterior of the coat and no bullet found inside the coat. Gavin died as a result of a gunshot wound to the back of his head.

Taylor asserted at trial that the killing was in self-defense. He testified that he was about to enter the automobile parts store when Gavin "yelled like 'Hey man, come here[.]'" Taylor testified that when he reached the back end of Gavin's car, Gavin started to pull out a "large, black ... gun[.]" Taylor then told Gavin to "freeze. Don't move," and drew his own weapon. According to Taylor, "[a]fter I told him to freeze, he didn't freeze. I just pulled my gun back, cocked the hammer, and I fired somewhere low at him." Gavin "didn't move, buckle, or nothing," so Taylor "shot up to the left again[.]" Gavin then "made a quick jerk movement back this way and [Taylor] shot again[.]" After the three shots, Gavin was still "up moving," so Taylor "decided the only place I could go was at him to survive. And just shut my eyes, and fired."

The jury was instructed on the issue of self-defense, but convicted Taylor of murder. He was also convicted of criminal recklessness for shooting at Galloway.

### I. Exclusion of Hearsay Statements

 Taylor first contends that the trial court erred by excluding statements made by Taylor to Officer Brian Smith upon his arrest. During cross-examination of Smith, Taylor's counsel asked Smith about "various

---

1. South Bend Fire Department Captain John Fleming testified that the clip was found in Gavin's "undershirt pocket." South Bend Police Officer Eugene Eyster testified that the clip was found in "the inner pocket [of Gavin's jacket] on the left hand side[.]"

statements" made by Taylor after being arrested. The State objected on the basis of hearsay. Outside the presence of the jury, Smith testified that Taylor told him several times that the police should check Gavin "for gun powder residue on his hands," that Taylor "did nothing wrong, that the other guy had a gun" and that Gavin was shot during a fight over that gun. Taylor contended in the trial court that these statements were "an admission. They are voluntary statements." However, he does not raise this claim on appeal.[2] Rather, Taylor argues for the first time on appeal that the proffered statements were not hearsay because they were a prior statement by a witness[3] and, in the alternative, that they fall under the "present sense impression" or "excited utterance" exceptions to the hearsay rule. *See* Ind. Evidence Rules 803(1) & (2). Taylor is limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal. *Humphrey v. State*, 680 N.E.2d 836, 841 (Ind.1997); *see also* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 103.113, at 55 (2d ed. 1995 & Supp. 1999) ("An offer to prove assists the trial court in determining admissibility and assists the appellate evaluation of prejudice to the proponent of the excluded evidence. To achieve these purposes, the offer of proof should identify not only anticipated testimony, but also the grounds on which the evidence is believed to be admissible.") (footnotes omitted). Any claim of error based on these grounds not raised at trial is waived.

## II. Expert Testimony

Taylor next argues that the trial court erred by allowing the pathologist who performed the autopsy of Gavin to offer an opinion regarding the relative position of the person who fired the shot that killed Gavin. Over objection, the pathologist testified that "[t]he direction [of the shot] was from back to front, and so I would think that the shot was fired from behind the victim." Taylor asserts that this testimony required a forensic pathologist's expertise.

▄▄▄ Evidence Rule 702(a) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Two requirements must be met in order for a witness to qualify as an expert: (1) the subject matter must be distinctly related to some scientific field, business or profession beyond the knowledge of the average person and (2) the witness must have sufficient skill, knowledge or experience in that area so that the opinion will aid the trier of fact. *Bacher v. State*, 686 N.E.2d 791, 800 (Ind.1997). The trial court's decision to admit or exclude evidence under this rule is reviewed on appeal only for an abuse of discretion. *Roach v. State*, 695 N.E.2d 934, 939 (Ind.1998).

▄▄▄ The pathologist, Dr. Deogracias, testified that, after graduation from medical school, he had served a four year residency in pathology at the University of Michigan from 1975–79 and had been a pathologist at the South Bend Medical Foundation since 1979. One of his duties is to "do autopsies,"

---

**2.** We assume this argument was based on Indiana Evidence Rule 801(d)(2), "Statement by party-opponent," whose federal counterpart is captioned "Admission by Party–Opponent." It excludes from the definition of hearsay a statement "offered against a party" if it is "the party's own statement[.]" Ind. Evidence Rule 801(d)(2). Although the statements at issue were made by Taylor, they were being offered by him during his cross-examination of Smith. Accordingly, they were not admissible under this rule.

**3.** Evidence Rule 801(d)(1) provides in relevant part that a statement is not hearsay if:
[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B)

consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose[.]

Taylor's statements are not admissible under this rule because the motive to fabricate existed at the time of arrest and Taylor sought the admission of these hearsay statements prior to taking the stand. The rule specifically requires that the declarant testify and be subject to cross-examination concerning the statements. In the absence of Taylor's testimony, there is no way to know whether Smith's testimony would have been consistent with it.

and he had performed approximately 700 autopsies at the time of Taylor's trial. Dr. Deogracias testified earlier without objection that the fatal wound "was located two inches—at the back of the head, two inches from the right.... The path of the projectile traveled from the back to the front[.]"

This testimony was beyond the knowledge of the average juror. Dr. Deogracias' extensive experience performing autopsies qualified him to offer an opinion with respect to the position of the shooter, regardless of whether he was certified as a "forensic pathologist" or merely a pathologist. *See generally* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 702.107, at 364 (2d ed. 1995 & Supp.1999) ("The witness generally need not specialize in the field in which her opinion is offered, as long as her qualifications suffice to make her opinion helpful to the trier of fact."). The trial court did not abuse its discretion by allowing this testimony. *Cf. Bacher*, 686 N.E.2d at 800 (finding no abuse of discretion in allowing a paramedic to testify as to his opinion of time of death of the victim).

### III. Sufficiency of the Evidence for Murder

■ Taylor next contends that the State did not negate his claim of self-defense. When a claim of self-defense is raised, the State must disprove at least one of the elements of self-defense beyond a reasonable doubt. *Brooks v. State*, 683 N.E.2d 574, 577 (Ind.1997) (citing *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995)). A claim of self-defense in a homicide prosecution requires, among other things, that the defendant had a reasonable belief that deadly force was "necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony." *See* IND.CODE § 35–41–3–2(a) (1998). Whether a defendant acted in self-defense is generally a question of fact for the jury. *Brooks*, 683 N.E.2d at 577. Upon

appellate review the jury's conclusion is entitled to considerable deference. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the State beyond a reasonable doubt. *Lilly v. State*, 506 N.E.2d 23, 24 (Ind.1987).

■ The jury heard Taylor's account of the killing as well as the contrary evidence offered by the State. The jury did not buy Taylor's self-defense claim, and there is ample evidence to support its conclusion. Although Taylor claims Gavin pulled a gun on him, Gavin's gun was found tucked in his pants and underneath several shirts. The gun was not loaded and its clip was located in Gavin's pocket. Moreover, several witnesses saw Taylor wearing a ski mask, presumably to conceal his identity in light of Taylor's testimony that the temperature was fifty-five degrees. William Karn saw Taylor "standing over" Gavin, who "was laying face down," shooting him. This testimony was corroborated by the pathologist who testified that Gavin was shot in the back of the head, and directly contradicts Taylor's testimony that he was facing Gavin who was "up moving" while being shot. Finally, Taylor ran from the scene immediately after the shooting, rather than seeking aid for Gavin or waiting to tell the police that he had shot an armed man who had drawn a gun on him.

In short, Taylor's contention is nothing more than a request to reweigh the evidence and draw inferences in his favor.[4] Our well settled standard of review precludes this.

### IV. Consecutive Sentences

■ As a final point, Taylor argues that trial court erred by imposing consecutive sentences. The sentencing order provides in material part:

> The Court finds aggravating circumstances as far as sentencing; specifically in the defendant's two prior felony convictions

4. Taylor points out the following "undisputed" facts: "Gavin wore an unseasonably long coat. Gavin possessed a semi-automatic assault pistol. Gavin possessed thirty rounds of ammunition." From these facts, he concludes that it is "reasonable to infer that Gavin had no reason to carry an empty gun with an inoperable clip. Since the dent in the clip is consistent with being struck by a bullet, Gavin must have drawn on Taylor." The more reasonable inference, and the one that supports the jury's verdict, is that the Gavin never drew his gun, which was found tucked in his pants. The inoperable clip and its discovery in Gavin's pocket lends further support to this inference.

and various misdemeanor involvements. The Court does not find mitigating circumstances. Accordingly, upon Count I the Court imposes the recommended sentence of 60 years at the Department of Correction.... Upon Count II, the Court agrees with the State that it was a totally separate offense and the Court will impose a sentence of 2 years at the Department of Correction which will run consecutively to Count I[.]

Taylor contends that the order "did not articulate a sufficient reason for imposing consecutive sentences," because "the only reason given by the court for imposing consecutive sentences was that Count II 'was a separate offense.'" This argument misreads the sentencing order.

 The trial court properly found an aggravating circumstance, no mitigating circumstances, and concluded that the aggravating factor justified enhanced and consecutive sentences. "The court may consider the aggravating and mitigating circumstances in [Indiana Code § ] 35–38–1–7.1(b) and [Indiana Code § ] 35–38–1–7.1(c) in making a determination [regarding consecutive sentences]." IND.CODE § 35–50–1–2(c) (1998); see also id. § 35–38–1–7.1(b)(2) (listing "a history of criminal or delinquent activity" as a statutory aggravating circumstance). Moreover, the same reasons may be relied on to support an enhanced sentence and consecutive sentences. Brown v. State, 698 N.E.2d 779, 781 (Ind.1998) (citing Williams v. State, 690 N.E.2d 162, 172 (Ind.1997)). The trial court provided adequate justification for the imposition of consecutive sentences.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.