**George Otis TURNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 39A05–9901–CR–12.

Court of Appeals of Indiana.

Dec. 6, 1999.

Terrance W. Richmond, Milan, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

George Otis Turner appeals his convictions by jury of two counts of child molesting, one as a B felony and one as a C felony.

We affirm.

### ISSUES

1. Whether the trial court erroneously admitted testimony by a forensic nurse examiner.

2. Whether the trial court erred when it did not allow

(a) Turner to testify about certain actions by the victim; and

(b) a psychologist to testify that she had recommended Turner's children remain in his custody.

3. Whether sufficient evidence supports the convictions.

### FACTS

In March of 1996, Scarlet Klett married Turner. She and her four year old daughter K. moved into the trailer where he lived with his three school-age children. In August of 1996, the family moved to a house. From August until January 1997, Scarlet worked two jobs outside the home,

and Turner worked three twelve-hour shifts on Friday, Saturday, and Sunday. When K. was not in day care, Turner watched her at home.

During the period when the family lived in the house, Turner "gave [K.] a bad touch" by touching her "in a wrong place," explained by K. to be the area of her genitals. (R. 785, 786). Turner touched K.'s genital area "with his hand," which he "made [ ] go back and forth" when he "put it on [her] privates." (R. 786). Turner also made K. wrap her hand around his penis and move her hand up and down on it. And more than once Turner made K. put her mouth on his penis.

Two months after her marriage to Turner, Scarlet noticed a change in K.'s behavior. Having earlier been "a very happy, friendly outgoing little girl," K. became short-tempered, confrontational, and "clingy." (R. 787, 788). These changes in demeanor were more pronounced during the period of August through December of 1996. K. also resumed bed wetting—which she had not done in more than a year.

In January of 1997, Scarlet separated from Turner and went to Richmond, Virginia with K. Around the first of March, Scarlet observed K. positioning her dolls one on top of another and saying that they were having sex. Scarlet had taught K. the proper terms for body parts but "had not known that she was familiar" with the idea of sex. (R. 740). When K. told Scarlet that "she had been touched where she shouldn't have been," (R. 741), Scarlet called the child abuse hotline, and then the Department of Social Services in Virginia.

Based upon the advice of the latter, Scarlet contacted the Chippenham Medical Center about bringing in K. for an examination. The Center advised her that they had a specialist for such an examination, who would be available the next morning. The next morning, Scarlet took K. to the Center, where she was examined by Gail Ragan, a certified forensic nurse examiner. As a certified forensic nurse examiner, Ragan observes, identifies and documents abuse injuries. As to K.'s medical history, K. reported to Ragan that "she was touched . . . and rubbed" by Turner in her genital area. (R. 484). Ragan then performed a gynecological examination of K. in order to observe and identify any possible abuse injuries. Ragan observed five or six striated areas around the labium majora and a small area of red stippling. According to Ragan, striations are essentially scar tissue, and stippling is the spotting from broken blood vessels. Ragan described these conditions as "indicative of some type of abuse," possibly "from finger manipulation." (R. 544).

After having K. examined at the Center, Scarlet took her to the Department of Social Services, where K. was interviewed by Karen Vaughn, the senior social worker who was lead investigator in cases of alleged abuse. The Department recommended counseling for K., and K. began seeing Emily Blankenship, a licensed clinical social worker. Blankenship diagnosed K. as suffering from post-traumatic stress disorder, which may result when a child has perceived a serious threat to her safety.

In Indiana, Yvonne Wilson of the Jefferson County Office of Family and Children was assigned to investigate the possible abuse of K. She arranged for Dr. Deborah Willage, a psychologist, to interview Turner's three children. The children were allowed to continue to live with Turner.

Turner was charged with three counts of child molesting. Before trial, the State filed, and the trial court granted, a motion in limine to exclude the testimony of Judy Taylor, a registered nurse. Taylor would have testified that Ragan was not a medical doctor and did not consult with a medical doctor in the course of her examination of K. When Ragan's deposition was read at Turner's trial, the jury was informed of these two facts. The State also filed a motion in limine to exclude testimony of

"alleged specific instances [K.'s] past conduct" prohibited under Ind. Evidence Rule 412. (R. 224). The trial court also granted this motion. After a three day trial, the jury found Turner guilty of two counts of child molesting.

## DECISION

### 1. *Admission of Evidence*

◼️ Turner claims that the trial court erred in permitting forensic nurse Ragan to testify that striation in the genital area is "indicative of some type of abuse" and "could be from finger manipulation in that area" because "Ragan was not qualified to give such testimony" and "[o]nly a doctor practicing forensic pediatrics could speak to such a conclusion." Turner's Brief at 18.

◼️ The trial court has broad discretion to determine the admissibility of evidence, and we will not reverse the trial court's ruling on the admissibility of evidence absent an abuse of discretion. *Willoughby v. State*, 660 N.E.2d 570, 580–81 (Ind.1996). Also, the trial court's determination of whether a witness is qualified to testify as an expert is reviewed for an abuse of discretion. *Hanson v. State*, 704 N.E.2d 152, 155 (Ind.Ct.App.1999)

◼️ Ind. Evidence Rule 702(a) provides that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

The Rule assigns to the trial court a "gatekeeping function." *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 596 (Ind.Ct. App.1996), *trans. denied.* Two requirements must be met for a witness to be qualified as an expert. *Taylor v. State*, 710 N.E.2d 921, 923 (Ind.1999). First, the subject matter must be distinctly related

to some scientific field, business, or profession beyond the knowledge of the average person. *Id.* Second, the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Id.*

As to whether Ragan was qualified to give the testimony admitted, her testimony reflects that she had been a registered nurse for 21 years and had worked in the emergency room for 15 years. In addition, 2 years before her examination of K., Ragan had been trained and certified as a forensic nurse examiner. Ragan detailed the course work she completed in that regard, as well as "practical training" with a physician. (R. 534). She stated that she was trained to conduct physical examinations and take medical histories. She regularly examines patients to observe, identify, and document their injuries. In this case, Ragan said, she was charged with the duty of observing K.'s injuries as the forensic nurse in the Center's emergency room. Thus, Ragan's observations as to the striations and stippling she observed in K.'s genital area were observations she was both trained and employed to make. Ragan's education and training provided her with specialized knowledge that would be helpful to the triers of fact. Given her education, training, and experience, the trial court did not abuse its discretion in allowing Ragan to testify within the limits of that education, training, and experience. *See Swoaks v. State*, 519 N.E.2d 149 (Ind. 1988).

As to Turner's argument about the substance of Ragan's testimony, in *Swoaks* our supreme court considered a claim that a licensed practical nurse was not qualified to testify as an expert. It noted the nurse's years of emergency room experience in treating various types of injuries—including cuts inflicted by glass—and held that the trial court did not abuse its discretion in allowing the nurse to testify that a patient's cuts "were consistent with other cuts she had treated which were known to be cuts caused by broken glass." *Id.* at

150. *Swoaks* noted that the nurse "did not testify as to the cause of the injuries" but "merely testified that the cuts and abrasions in appellant were consistent with glass-cut wounds she had previously observed." *Id.* at 151.

Ragan did not opine that the injuries she observed on K. were caused by sexual molestation. Rather, she stated that the striation and stippling "indicate a possibility of something occurring in that area" and such were "not the strongest points we aim in on, but they are red flags." (R. 504). The subsequent testimony then explains this testimony, by saying that striation "is indicative of some type of abuse" that "*could* be from finger manipulation." (R. 544) (emphasis added). Thus, like the nurse in *Swoaks,* Ragan did not testify as to the cause of K.'s injuries.[1]

The trial court did not err in admitting her testimony.

2. *Exclusion of Evidence*

a. *Testimony by Turner*

Turner refers us to a series of motions in limine filed by the State before trial which he claims prevented his "responding to the allegations and presenting his defense." Turner's Brief at 14. However, we find only one proffer in this regard, and it appears to contest the State's motion in limine to exclude "any evidence of alleged specific instances of past conduct of" K. because it would contravene Evid. R. 412.

Evid. R. 412 provides that in a prosecution for a sex crime,

> evidence of the past sexual conduct of a victim ... may not be admitted, except:
> (1) evidence of the victim's ... past sexual conduct with the defendant;
> (2) evidence which shows that some person other than the defendant committed

the act upon which the prosecution is founded;....[2]

According to Turner's proffer to the trial court, he would have testified that K. once "tried to grab his penis;" that he had watched her place her fingers "inside her pants and move her fingers in the vaginal" area and saw her "do masturbation;" and that he had once seen her in the yard with a neighbor boy and both were "unclothed ... from their naval down to the knees." (R. 898, 899).

Turner fails to assert that the testimony described in his proffer would be evidence fitting within an exception to the prohibition of evidence of the past sexual conduct of a victim. The first assertion, that K. tried to grab his penis, is not necessarily viewed as sexual conduct on K.'s part with Turner. *See* Evid. R. 412(a)(1). And testimony about masturbation by K. does not fit within the exception for sexual conduct by K. with Turner. Turner does direct us to *Steward v. State,* 636 N.E.2d 143, 149 (Ind.Ct.App.1994), *aff'd* 652 N.E.2d 490 (Ind.1995), which allows "introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the State has placed at issue." Turner has failed to develop an argument as to how *Steward* applies to the facts here. If Turner intends to suggest that his having seen K. outside with a neighbor boy when both were partially undressed would "support[ ] a reasonable inference" that the boy—and not Turner—molested K., and on this basis his testimony must be admitted, we must disagree.

As in *Kielblock v. State,* 627 N.E.2d 816, 820 (Ind.Ct.App.1994), *trans denied,* the

---

1. Within this issue, Turner suggests that Ragan impermissibly gave an opinion on "the ultimate issue of guilt" and "the credibility of the child victim witness." Turner's Brief at 19. He directs us to no such testimony, and we find none.

2. The Rule further provides that the party proposing to offer such evidence "must" file a "written notice" at least ten days before trial describing the evidence. Evid. R. 412(b). Turner filed no such motion.

exception allowing evidence that another might have committed the molestations is inapplicable because there is no evidence that K. was confusing her perpetrator, inasmuch as she consistently accused Turner of molesting her and identified him in court as the perpetrator. Moreover, in his offer Turner did not testify that he observed any molesting action undertaken by the neighbor boy. *See id.* Because Turner's testimony was not of a specific instance of sexual activity that showed some person other than Turner had committed the acts upon which the prosecution was based, the trial court did not abuse its discretion by excluding the evidence. *Id.*

b. *Testimony by Dr. Willage*

■ Turner also claims that the trial court erred in not allowing testimony of Dr. Willage that she recommended Turner's children remain in his home. Turner presents no authority for the proposition that such exclusion was wrongful; he simply argues that the exclusion prevented his presenting "his complete defense." Turner's Brief at 28.

As already noted, the trial court has broad discretion in its determination on the admissibility of evidence, and we will not reverse such a ruling absent an abuse of discretion. *Willoughby,* 660 N.E.2d at 580–81. Evidence that is not relevant is inadmissible. Evid. R. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence. Ind. Evidence Rule 401.

■ According to Turner's proffer, the psychologist interviewed Turner's children and "determined that there was nothing that she saw that was of particular concerning regarding the children having been possibly molested." (R. 775). Evidence that Turner's own children had not been molested does not have any tendency to make it less probable that he molested his stepdaughter. Moreover, as noted in FACTS, the jury heard testimony indicating that Dr. Willage interviewed Turner's children, and that the children were allowed to remain in his care after the interviews. Therefore, even if Dr. Willage's testimony was erroneously excluded, there is no reversible error. *See Sylvester v. State,* 698 N.E.2d 1126, 1130 (Ind.1998) ("Where the wrongfully excluded testimony is merely cumulative of other evidence, its exclusion is harmless error.") [3]

3. *Sufficiency of the Evidence*

Finally, Turner argues that the evidence was not sufficient for the jury to find him guilty of two counts of child molesting because "the credible evidence did not establish each essential element of the crimes beyond a reasonable doubt and the uncorroborated testimony of [K.] contained only bald assertions without specific information as to how, when and where these acts occurred." Turner's Brief at 21.

3. In his argument as to how the trial court erred in *allowing* the testimony of Nurse Ragan, Turner also argues that the trial court erred in excluding the testimony of Nurse Taylor. As noted in FACTS, the State filed a motion to exclude testimony from Taylor about how Ragan was not a medical doctor and had not consulted with a medical doctor about her examination of K. At trial, the court held testimony from Taylor was "not relevant." (R. 812). Taylor practiced nursing in Indiana and Kentucky. She had not examined K. Turner makes no argument on appeal as to how her testimony was relevant and presents no authority for the proposition

that the exclusion of her testimony constituted an abuse of discretion.

Moreover, Turner's cross-examination of Nurse Ragan established that Ragan was not a doctor. It further established that "before [Ragan] let the child go," she had "given a verbal report" to a physician about her examination of K., but the procedure at the Center was that a physician would only become involved if the patient had a physical injury that required medical treatment. (R. 507). Thus, even if the exclusion of Taylor's testimony was erroneous, Turner could not show how he was harmed inasmuch as the jury heard this evidence. *See Sylvester.*

In appellate review on a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997). We consider only the probative evidence supporting the verdict and reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

As to Turner's contention that we look at only the "credible evidence," our standard of review precludes our making such an assessment. With respect to his claim that each essential element of the crimes was not established, he fails to develop any argument in that regard.

The jury convicted Turner of one count of child molesting that charged he had inserted his penis in K.'s mouth, and a second that charged he had performed or submitted to fondling or touching with K. K. testified that Turner, who she identified in court, made her place her mouth on his penis. K. testified that Turner "gave [her] a bad touch" by touching her "in a wrong place," explained by K. to be the area of her genitals. (R. 785, 786). She testified that Turner touched her genital area "with his hand," which he "made [ ] go back and forth" when he "put it on [her] privates." (R. 786). K. testified that Turner made her wrap her hand around his penis and move her hand up and down on it.

A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Parmley v. State,* 699 N.E.2d 288, 291 (Ind.Ct.App.1998), *trans. denied.* K.'s testimony alone is sufficient to sustain Turner's convictions. Moreover, Turner's assertion of a lack of any corroboration for K.'s testimony ignores her mother's testimony about her behavior, the nurse's observation of physical markings in K.'s genital area, and the counselor's diagnosis of post-traumatic stress disorder.

Finally, we note Turner's claim that his convictions must be reversed for lack of sufficient evidence because "no testimony whatever was given relating to where these acts occurred, when, what time of day, who else was present or anything else which might complete" K.'s account of the molestations. Turner's Brief at 22. We refer again to the definition of relevance. *See* Evid. R. 401. Turner fails to enlighten us as to how the place or time or presence of another person is relevant to proving the charged molestations by Turner. Also, we note that he failed to pursue these questions he now deems critical in his own cross examination of K.

We find no error here.

GARRARD, J., and FRIEDLANDER, J., concur.