Ernest STEWART, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S02–9904–CR–211.

Supreme Court of Indiana.

Dec. 30, 1999.

William F. Thoms, Jr., Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Ernest Stewart contends that his conviction for driving while his license was suspended as an habitual traffic violator must be reversed because the Bureau of Motor Vehicles sent him an inadequate notice. We hold otherwise.

The Bureau determined Stewart to be an habitual violator, and on August 23, 1993, it mailed him a notice of its determination. The current case arose on October 5, 1995, when police discovered a dazed and bloodied Stewart behind the wheel of his Cadillac after he crashed into a utility pole at high noon. Stewart did not have his license with him, and he was transported to the hospital before the investigating officer could check the status of the license. Subsequent inquiry revealed Stewart's 1993 adjudication as an habitual traffic violator. The State eventually charged Stewart with having "operated a motor vehicle in Marion County during the Habitual Traffic Violator suspension of his driving privilege," a class D felony (R. at 8.)

At trial, the State introduced into evidence Stewart's official driving record. The record included a letter from the BMV to Stewart dated August 23, 1993, titled "Habitual Traffic Violator Notice of Suspension," and a certification by a BMV clerk that the letter was mailed that same day. The letter informed Stewart he had been determined to be an habitual violator and that his license would be suspended for ten years beginning October 1, 1993.

It also informed Stewart that he could request an administrative review.

The record also contained a second BMV letter to Stewart dated November 30, 1995, which stated in its entirety:

Previously the Indiana Bureau of Motor Vehicles sent you a notice stating that you qualified for habitual traffic violator status pursuant to IC 9–30–10–4 and that your driver's license would accordingly be suspended for the time period provided for by law. That notice informed you of procedures for contesting administratively the determination of habitual traffic violator status in the event o[f] material error in your official driver record.

The purpose of this letter is to clarify that you are also entitled to seek judic[ial] review of your suspension directly under IC 9–30–10. An explanation of the appropriate contents of a petition for judicial review can be found in IC 9–30–10–7.

This notice is solely for the purpose of reiterating to you your right to directly (sic) seek judicial review under IC 9–30–10. Your suspension for HTV remains in effect with[out] change. If you have any questions, please contact the Department of Driver Improvement/Safety Responsibility at 317–232–2840.

(R. at 39.)

Stewart objected to the exhibit, claiming the certification of the record was incomplete and that the State had not established that the record was his. The court overruled Stewart's objections and admitted the exhibit. The State rested. Stewart requested a verdict on the evidence, saying the State had failed to show that the address to which the 1995 notice was sent was his last known address.

There followed a lengthy discussion by the parties and the court concerning the addresses to which the two notices were sent. From that discussion, it appeared plain enough that the first notice was mailed to Stewart's latest address as BMV

knew it at the time. The court denied Stewart's motion for a verdict on the evidence. Stewart rested. The court found him guilty as charged. It sentenced Stewart to 545 days in jail (suspending 535 days), suspended his license for life, ordered one year's probation, and assessed fines, fees, and costs of $325.

■ Stewart appealed his conviction on the grounds that the State had failed to prove it mailed the 1995 notice informing him of his chance for judicial review, contending that this constituted reversible error under *Brown v. State*, 677 N.E.2d 517 (Ind.1997).[1] The State argued that there was sufficient evidence presented to infer that the 1995 notice had been mailed. The Court of Appeals agreed with Stewart and reversed his conviction. *Stewart v. State*, 704 N.E.2d 1110 (Ind.Ct.App.1999).

The State petitioned for transfer, arguing that there was conflicting authority in the Court of Appeals about whether proof of mailing a notice of suspension is a matter of "evidentiary foundation" that is waived if not raised at trial. We granted the State's petition.

### License Suspensions and Mens Rea

The law at issue in this appeal, Ind.Code § 9–30–10–4, reads: "A person who operates a motor vehicle: (1) while the person's driving privileges are suspended under this chapter...; or (2) in violation of the restrictions imposed under this chapter... commits a Class D felony." Our case law has not been kind to a relatively simple statute.

The section in question is part of a larger legislative scheme, Ind.Code ch. 9–30–10, governing repeat violation of traffic laws. The legislature has spelled out (1) the means by which a person is determined to be an habitual offender; (2) the

means by which the BMV is to notify a person of its determination that the person is an habitual traffic violator and of his rights to challenge the determination before the agency; (3) how one may seek administrative review of BMV's determination; (4) how a person may seek judicial review of the BMV's determination; and (6) the offense and penalties of operating a motor vehicle in violation of the chapter.

This Court's recent encounters with law in this field commenced with *State v. Keihn*, 542 N.E.2d 963 (Ind.1989). There, we confronted the fact that the criminal provisions for driving on a suspended license do not contain an explicit mens rea. We outlined a methodology for analyzing such criminal statutes in order to determine which ones should be interpreted as requiring a showing of intent and which ones should be regarded as strict liability offenses. Applying this methodology to the misdemeanor statute for driving while license is suspended,[2] we held that the State "must prove the defendant's knowledge of the suspension of his license." *Keihn*, 542 N.E.2d at 968.

In so holding, we associated ourselves with the decision in *Burdine v. State*, 510 N.E.2d 1385 (Ind.Ct.App.1987), *trans. denied*. In that case, the Court of Appeals held that to achieve a conviction for driving after having been adjudged an habitual traffic violator ("HTV") the State must prove that "the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be a habitual offender." *Id.* at 1389, *cited in Keihn*, 542 N.E.2d at 964. There had been no proof in *Burdine* that the State had even mailed its suspension notice (or that Burdine knew about it in any other way), so the

---

1. Stewart also alleged a violation of due process rights under both the United States and Indiana Constitutions. Under the reasoning of *City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), due process does not require a state to provide notice of state law remedies when such

remedies are established by generally available state statutes and case law. *Id.* at 681. Stewart has not presented any cogent argument concerning the Indiana Constitution.

2. Formerly Ind.Code § 9–1–4–52(a), currently Ind.Code § 9–24–18–5.

Court of Appeals held the evidence insufficient. *Id.*

These two cases adequately addressed the question of criminal intent for purposes of driving while suspended or driving after being adjudged an habitual violator. For a while, they seemed to suffice. *See, e.g., Stanek v. State,* 519 N.E.2d 1263 (Ind.Ct.App.1988) (HTV conviction requires (1) driving, (2) after adjudged an HTV, and (3) "showing that the defendant. knew or reasonably could have known.")

Then, the caselaw took a slight turn in *Bishop v. State,* 638 N.E.2d 1278 (Ind.Ct. App.1994). In Bishop's case, the BMV tendered as a trial exhibit its own computer record showing that it had mailed him a notice of his habitual violator adjudication, but it did not tender a copy of the notice itself. Bishop argued that the State thus had not proved that the notice said the right thing (including alerting him to the available avenues of relief) and thus had not "establish[ed] the element of a valid suspension." *Id.* at 1279–80.

The *Bishop* court characterized *Stanek* as standing for the proposition that proof of mailing the notice is "an evidentiary prerequisite to proving that a suspension for being an habitual traffic law violator is valid" and then opined that the same must logically be true concerning the contents of the notice. *Id.* at 1280. It thus declared the HTV adjudication invalid and reversed Bishop's criminal conviction for driving after being adjudicated an HTV. After *Bishop,* we used similar language about mailing as an "evidentiary prerequisite." *See, e.g., Brown,* 677 N.E.2d at 519; *Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997).

As one might have foreseen, the use of the phrase "evidentiary prerequisite" led to a dispute over whether proof of mailing (or as here, the contents of the mailing) is a matter a party must raise at trial (as in, "I object to the admission of Exhibit One on grounds of inadequate foundation") or whether it is an element of the crimes of driving while suspended or after being named an HTV and thus always available on appeal as part of a sufficiency of the evidence claim. It is this debate the Attorney General has asked us to resolve.

### Return to First Principles

We think this case and others like it may be better resolved in a simpler way. The General Assembly has given us a relatively unadorned set of statutes. More or less, they say "one who drives while suspended commits a crime." Judicial accretions to these statutes have created a labyrinth more complicated than we could have envisioned in *Keihn* and *Burdine.*

■ We thus return to the first principle of *Keihn* and *Burdine.* To obtain convictions for driving while suspended or after being adjudicated an habitual violator, the State need prove what the statutes explicitly provide, (1) the act of driving, and (2) a license suspension or an HTV adjudication, *plus* the mens rea we have inferred: (3) that the defendant "knew or should have known."

■ Such a cleaner approach harmonizes many of the recent decisions, though perhaps not the language in them. Thus, as we ruled in *Brown,* the State cannot prevail when it proves only that it adjudicated someone as an HTV and does not prove that it mailed a notice or that the defendant otherwise knew of the adjudication. Similarly, the State *can* prevail when it proves the BMV mailed notices to a driver's last known address, inasmuch as such proof (or the defendant's fault in not providing a newer address) permits a finder of fact to enter a conviction by inferring the defendant's knowledge. *Fields,* 679 N.E.2d 898.

■ This is not to say that failures in the BMV notification process leave a driver without remedy. It is conceivable that failure to mail a notice might afford a driver certain tardy remedies in the administrative process or in court, though we do not decide such today. A driver who knows of his suspension and still drives, however, commits the act which our legislature has made a criminal offense.

This distinction is illustrated by *Gentry v. State*, 526 N.E.2d 1187 (Ind.Ct.App. 1988), *trans. denied*, Gentry, whose license had been suspended for life, continued to drive and was subsequently charged in two other courts for driving while under forfeiture. Through post-conviction relief Gentry managed to get seven of the underlying traffic offenses vacated. As a result, the court that accepted his guilty plea vacated its judgment effective back to the date of his conviction (thus vacating his conviction for driving while suspended as an habitual traffic violator and removing the penalty of suspension for life).

Gentry then sought to dismiss two pending charges for driving under forfeiture on grounds that the conviction which resulted in the forfeiture no longer stood. The Court of Appeals refused, holding that a person who has been adjudged an HTV remains in that status until the BMV rescinds its designation, and that a person is not free to disregard that administrative determination. *Id.* at 1188. If a person who knew he had been adjudged an HTV drove a vehicle, then he has committed the offense of Operating a Motor Vehicle After License Suspended, a separate and distinct offense. *Id.* at 1189. The record shows no effort by Stewart to contact BMV or to inquire or seek any remedy during the time his suspension was pending or after it became effective. While defects in the administrative process may warrant relief under administrative law, it is not the province of criminal proceedings to correct such errors. We thus disapprove of *Griffin v. State*, 654 N.E.2d 911 (1995) (HTV conviction reversed because notice had not contained procedures for seeking judicial review), and *Pebley v. State*, 686 N.E.2d 168 (1997) (same).

The *Gentry* court determined that the essence of the HTV offense was the act of driving after being so determined. *Id.* at 1189. The focus is not on the reliability or non-reliability of the underlying determination but on the mere fact of the determination. *Id.* at 1188. Quoting a Georgia appellate court, our court stated: " 'It follows that the crucial date, insofar as habitual violator status is concerned, is the date of driving, not the date on which the status is challenged or set aside. If the person is driving despite notification that he may not do so because he has been declared an habitual traffic violator, he is flaunting the law even if one or more of the underlying convictions is voidable.' " *Id.* at 1189 (quoting *State v. Bell*, 182 Ga.App. 860, 357 S.E.2d 596, 598 (1987)).[3]

The record in this case clearly shows that in 1993 the Bureau mailed Stewart a notice of his HTV adjudication, at the address last known to the Bureau. Under our holding in *Keihn*, Stewart had constructive knowledge that his license was suspended, yet he continued to drive. He thus committed the offense of driving while suspended as an HTV, a class D felony.

### Conclusion

Because Stewart knew or reasonably should have known that he was not to drive after October 30, 1993, and did drive thereafter his conviction for driving while suspended as an habitual traffic violator is valid. We vacate the opinion of the Court of Appeals and affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**3.** *Accord State v. O'Neill*, 473 A.2d 415 (Me. 1984) ("Maine has a legitimate interest in the use of imprisonment sanctions to deter prospective motor vehicle operators from flouting the civil disability classification of an habitual offender, so long as the classification stands unreversed, to assure maximum safety for all other travelers on the public highways of the State, notwithstanding any impairment in the proceedings leading to the habitual offender adjudication and regardless of the basis upon which the person was declared ineligible to operate a motor vehicle.")