Salvatore DeSANTIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–0102–CR–65.

Court of Appeals of Indiana.

Dec. 21, 2001.

Rehearing Denied Feb. 7, 2002.

J.J. Paul III, Mitchell P. Chabraja, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Salvatore Desantis ("Desantis") appeals his conviction for operating a motor vehicle after being adjudged a habitual traffic violator ("HTV"),[1] a Class D felony. We affirm.

### Issue

Desantis raises one issue, which we restate as whether there was evidence sufficient to support his conviction.

### Facts and Procedural History[2]

In 1994, the Bureau of Motor Vehicles ("BMV") adjudged Desantis an HTV[3] and on October 7, 1994, sent Desantis notice of his impending driver's license suspension and his right to administrative review of the suspension. Desantis's license has been suspended since November 17 of that year. On November 30, 1995, the BMV sent Desantis notice of his right to have his suspension judicially reviewed. On November 19, 1999, Desantis was arrested for operating a vehicle while intoxicated ("OWI") and operating a motor vehicle after being adjudged an HTV. On November 20, 2000, Desantis pled guilty to OWI and was tried by the court on the remaining charge. On January 5, 2001, the trial court convicted Desantis of operating a motor vehicle after being adjudged an HTV. On January 17, 2001, the trial court sentenced him to one and one-half years in the Hancock County jail and suspended his driver's license for life. Desantis now appeals his conviction for operating a motor vehicle after being adjudged an HTV.

### Discussion and Decision

 Desantis argues that there was insufficient evidence to support his conviction for operating a motor vehicle after being adjudged an HTV.

When reviewing a claim of insufficient evidence, we consider only evidence that supports the verdict, and draw all reasonable inferences therefrom. We do not reweigh the evidence nor do we judge the credibility of witnesses. We uphold a conviction if there is substantial evidence of probative value from which a [finder of fact] could have found the defendant guilty beyond a reasonable doubt.

---

1. IND.CODE § 9–30–10–16. If the Bureau of Motor Vehicles ("BMV") has adjudged a person to be an HTV, the BMV is required to send notice informing that person that his driving privileges will be suspended in thirty days. See IND.CODE § 9–30–10–5(a). The notice must also advise the person that he may notify the BMV that his driving record contains a material error. See id. § 9–30–10–6. If the BMV determines that the record does contain a material error, the BMV will either prevent the suspension or reinstate the driver's privileges. See id. § 9–30–10–6(b). Finally, the notice must also advise that person of his right to have any BMV determination or action judicially reviewed. See id. § 9–30–10–5(c).

2. We note that the instant case and Gordon v. State, appellate cause number 30A01–0102–CR–64, were consolidated for briefing purposes only.

3. In an unrelated case, Desantis challenged the BMV's 1994 adjudication that he was an HTV and its subsequent suspension of his driver's license. His appeal from that unsuccessful challenge was consolidated with that of the named appellant in Groce v. State, 757 N.E.2d 694 (Ind.Ct.App.2001), petition for rehearing pending. In Groce, a panel of this court held that because the BMV failed to notify Desantis of his right to have the BMV adjudication judicially reviewed before suspending his license, as required by statute, the HTV adjudication and license suspension were invalid. See id. at 699. As we will explain later, however, under the law governing this case, the State was not required to prove that Desantis' license suspension was valid before he could be convicted of operating a motor vehicle after being adjudged an HTV.

*Warren v. State,* 725 N.E.2d 828, 834 (Ind. 2000) (citations omitted). Specifically, Desantis contends that the belated notice of his right to judicially challenge his driver's license suspension renders the suspension invalid and that proof of a valid suspension is an essential element of Indiana Code Section 9–30–10–16. As a threshold matter, we must determine if proof of a valid suspension is indeed necessary for conviction in this case.

When Desantis violated Indiana Code Section 9–30–10–16, the statute provided that "[a] person who operates a motor vehicle .... [w]hile the person's driving privileges are suspended .... commits a Class D felony." At the time, our court had interpreted this language to require that the underlying license suspension be valid. *See Pebley v. State,* 686 N.E.2d 168, 170 (Ind.Ct.App.1997) ("A necessary element of the crime of Driving While Suspended is that a defendant's driver's license be validly suspended."), *disapproved by Stewart v. State,* 721 N.E.2d 876, 880 (Ind.1999); *see also Griffin v. State,* 654 N.E.2d 911, 912 (Ind.Ct.App.1995) ("As Griffin's license suspension was invalid, his conviction of operating a motor vehicle while privileges are suspended cannot stand."), *disapproved by Stewart,* 721 N.E.2d at 880.

Before Desantis was tried for operating a motor vehicle after being adjudged an HTV, our supreme court clarified that Indiana Code Section 9–30–10–16 requires that the State prove only "(1) the act of driving, and (2) a license suspension or an HTV adjudication, *plus* the mens rea we have inferred: (3) that the defendant 'knew or should have known [of the license suspension].'" *Stewart,* 721 N.E.2d at 879. The *Stewart* court disapproved of *Griffin* and *Pebley* and specifically rejected the requirement that the underlying

HTV determination be valid, noting that "[w]hile defects in the administrative process may warrant relief under administrative law, it is not the province of criminal proceedings to correct such errors." *Id.* at 880.

Desantis still had not gone to trial by the time the legislature amended Indiana Code Section 9–30–10–16 to read, "A person who operates a motor vehicle .... while the person's driving privileges are *validly* suspended .... commits a Class D felony."[4] IND.CODE § 9–30–10–16(a) (emphasis added). In summary, when Desantis committed his crime, case law required that the State prove a valid suspension as an element of operating a motor vehicle after being adjudged an HTV. After he committed his crime but before he went to trial, the supreme court held that proof of a valid suspension was not required. Finally, when the requirement of a valid suspension was amended into the statute by the legislature, Desantis had yet to go to trial. Desantis argues that he should receive either the benefit of the earlier case law requiring proof of a valid suspension or the benefit of the later statutory amendment requiring the same.

### A. Applicability of Stewart

Desantis points out that *Stewart* had not yet been decided when he committed his crime and argues that it therefore should not control in the instant case. Desantis, however, provides no authority to support this contention. *See* Ind. Appellate Rule 46(A)(8)(a). We note that Stewart himself might well have made the same argument, but his conviction was upheld on appeal. The supreme court was interpreting the statute, not changing the law, and if the interpretation was applied to Stewart, we see no reason why it cannot be applied to Desantis. *See Bryant v. State,*

4. 2000 Ind. Acts 120 (effective July 1, 2000).

446 N.E.2d 364, 365 (Ind.Ct.App.1983) ("Constitutional provisions against ex post facto laws apply only to enactments by legislative bodies. A judicial construction of a criminal statute in effect at the time of the commission of the offense in question is not a violation of the ex post facto provisions.") (citations omitted).

### B. Amelioration

■ Desantis also argues that the doctrine of amelioration applies and that he should receive the benefit of the new statutory requirement that the suspension be valid. Generally, the statute to be applied when fixing punishment is the one in effect at the time the crime was committed. *See Bell v. State*, 654 N.E.2d 856, 858 (Ind.Ct.App.1995). The doctrine of amelioration is an exception to this general rule and provides that a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to the later statute. *See id.* However, "[i]t is only when the legislature enacts an amendment in which a *lesser punishment is imposed as proper punishment for the commission for the same proscribed act* that this amendment may be viewed as amelioratory." *State v. Turner*, 178 Ind. App. 562, 565, 383 N.E.2d 428, 430–31 (1978) (emphasis added).[5]

At all relevant times, operating a motor vehicle after being adjudged an HTV has been a Class D felony, always with the same potential for punishment. Second, the amendment changed the substantive definition of the proscribed act, and not the punishment therefor. In other words, by adding the requirement that the State prove that the suspension was valid, the legislature has changed the elements of, but not the punishment for, the crime of operating a motor vehicle after being adjudged an HTV. We therefore conclude that the doctrine of amelioration cannot be applied to the 2000 amendment to Indiana Code Section 9–30–10–16.[6]

### C. Legislative Intent

■ Desantis also argues that the 2000 amendment to Indiana Code Section 9–30–10–16 is evidence that the legislature always intended that the State must prove a valid suspension as an element of the crime of operating a motor vehicle after being adjudged an HTV, and that that intent should be effectuated in the instant case. While it is true that the legislature promptly amended the statute after *Stewart* was decided, "[s]ubsequent legislation does not serve retroactively to amend legislation or declare the intent of a prior General Assembly." *Sales v. State*, 723 N.E.2d 416, 421 (Ind.2000). The legislative intent might always have been to require a valid suspension, but

---

**5.** Desantis cites *Renfroe v. State*, 743 N.E.2d 299, 301 (Ind.Ct.App.2001), as an example of a case where the doctrine of amelioration has been applied to a non-sentencing provision of a statute. However, the opinion reads, "Although *the doctrine of amelioration does not strictly apply in Renfroe's case*, which involves a post-sentencing education credit as opposed to a substantive sentencing provision, the principle remains the same: Renfroe should not be subject to an ex post facto amendment to the statute that would effectively deprive him of credit time." *Id.* (emphasis added). *Renfroe*, therefore, does not expand the prin-

ciple of amelioration beyond laws directly or indirectly affecting sentencing.

**6.** We note that a panel of this court recently held that the doctrine of amelioration *does* apply to the 2000 amendment to Indiana Code Section 9–31–10–16, but our supreme court granted transfer in that case on April 6, 2001, thereby vacating the opinion of the court of appeals. *See State v. Hammond*, 737 N.E.2d 425 (Ind.Ct.App.2000), *trans. granted* (2001).

the amendment unambiguously expressing that intent did not take effect until after Desantis committed his crime and thus has no retroactive effect. *See Carpenter v. State*, 743 N.E.2d 326, 329 n. 2 (Ind.Ct. App.2001), *trans. denied* ("The instant violation [of Indiana Code Section 9–30–10–16] occurred in May 1999, before the amendment to the statute. Therefore, the *Stewart* standard is applicable."). The applicable law in this case is therefore the *Stewart* court's interpretation of the pre 2000 version of Indiana Code Section 9–30–10–16, and proof of a validly suspended license is not required.

### D. Application of Stewart

■ There is sufficient evidence to prove all three elements of Desantis's crime. The parties stipulated that Desantis was driving at the time he was arrested and also stipulated to Desantis's BMV record, which showed that his license was suspended when he was arrested on November 19, 1999. The driving record also contained copies of suspension notices with indications that the notices had been mailed to Desantis, which is sufficient to imply knowledge of the license suspension. *See Stewart*, 721 N.E.2d at 879 ("Similarly, the State *can* prevail when it proves the BMV mailed notices to a driver's last known address, inasmuch as such proof (or the defendant's fault in not providing a newer address) permits a finder of fact to enter a conviction by inferring the defendant's knowledge [of the license suspension].").

Affirmed.

KIRSCH, J., concurs.

BAILEY, J., dissents with opinion.

BAILEY, Judge, dissenting.

I respectfully dissent. While I agree that the doctrine of amelioration is inapplicable here, because the punishment for a violation of Indiana Code section 9–30–10–16 was not changed,[7] I disagree that Desantis could be convicted pursuant to the foregoing statute absent proof that his driver's license suspension was valid.

The habitual traffic violation suspension notice issued to Desantis was invalid because it failed to include the judicial review provision mandated by Indiana Code 9–30–10, which governs repeat violations of traffic laws. This circumstance rendered the State unable to meet its burden of proving that Desantis had violated the provisions of Indiana Code section 9–30–10–16, which requires a *valid* suspension to support conviction.

---

7. Generally, the statute to be applied when arriving at the proper criminal penalty should be the one in effect at the time the crime was committed. *Bell v. State*, 654 N.E.2d 856, 858 (Ind.Ct.App.1995). The doctrine of amelioration constitutes an exception to the general rule, and provides that "a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime." *Id.* (quoting *Lunsford v. State*, 640 N.E.2d 59, 60 (Ind.Ct.App.1994)). Indiana Code section 9–30–10–16, as amended, prescribes a more difficult burden of proof for the State than that contemplated in *Stewart*, but does not prescribe a lesser punishment upon conviction.

Although I concurred in *State v. Hammond*, 737 N.E.2d 425 (Ind.Ct.App.2000), *trans. granted*, an opinion which discusses generally the doctrine of amelioration and the applicability of the doctrine in light of the statutory amendment to Indiana Code section 9–30–10–16, upon reflection I have concluded that the amelioration discussion was misplaced. The analysis should have been limited to statutory construction and legislative intent, which is what the decision ultimately turned on. It was this rationale that garnered my concurrence and it is this rationale that is the basis of my dissent today.

At the time of Desantis's arrest on November 19, 1999, Indiana Code section 9–30–10–16 provided in pertinent part:

> (a) A person who operates a motor vehicle:
>
> > (1) While the person's driving privileges are suspended under this chapter or IC 9–12–2 (repealed July 1, 1991); ... commits a Class D felony.

In *Fields v. State,* 679 N.E.2d 898, 900 (Ind.1997), *Brown v. State,* 677 N.E.2d 517, 519 (Ind.1997), and *Loe v. State,* 654 N.E.2d 1157, 1158 (Ind.Ct.App.1995), the Indiana Supreme Court and this Court uniformly held that, absent proof of a valid suspension, a defendant could not be convicted of the offense of driving while suspended as an habitual traffic offender.

Subsequently, in *Stewart v. State,* 721 N.E.2d 876 (Ind.1999), our Supreme Court sought to harmonize previous habitual traffic offender decisions. The Court examined *Pebley v. State,* 686 N.E.2d 168 (Ind.Ct.App.1997), and specifically disapproved that decision, as well as *Griffin v. State,* 654 N.E.2d 911 (Ind.Ct.App.1995) (each of which reversed an habitual traffic offender conviction because the notice had not contained procedures for seeking judicial review). Without explicitly overruling *Loe* and *Fields,* the Court held that a conviction of driving after having been adjudged an habitual traffic offender requires that the State prove: (1) the act of driving, (2) after a license suspension or an habitual traffic violation adjudication, and (3) that the defendant knew or reasonably could have known that his driving privileges had been suspended as a result of having been determined to be an habitual traffic offender. *Stewart,* 721 N.E.2d at 879. Although the Court observed that a failure in the Bureau of Motor Vehicles notification process might afford a driver remedies in the administrative process, the Court nevertheless concluded that a driver who knows of his suspension and still drives commits a criminal offense pursuant to Indiana Code section 9–30–10–16. *Id.*

In apparent response to *Stewart,* the Indiana Legislature amended Indiana Code section 9–30–10–16 and explicitly inserted the word "validly" before the word "suspended." The timing of this modification is significant. Determining legislative intent is foremost in construing any statute, and where possible, this Court will give deference to that intent. *Alvers v. State,* 489 N.E.2d 83, 88 (Ind.Ct.App.1986). When the legislature amends a statute, it is presumed that the legislature intended to change the law unless it clearly appears that the amendment was made only to express the original intention of the legislature more clearly. *Id.* The legislature's amendment of a statute is indicative of the legislature's intent at the initial enactment of the statute. *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App.1995). Here, the addition of the single word "validly" to modify "suspended" represents a clarification of the legislature's original intent rather than a change to the requisite elements for conviction. As such, it effects a reaffirmation of the prior case law that required a valid suspension of driving privileges. The clear intent of the Legislature has consistently been to require that the State prove the existence of a valid license suspension.

Second, *Stewart* was not the relevant case law at the time of Desantis's act. *Stewart* was handed down on December 30, 1999, one month after Desantis performed the act of driving that led to his conviction. Accordingly, both the applicable statute and prevailing case law required the State to establish that Desantis's driver's license was *validly*

suspended. The State failed to do so. I would reverse the conviction.