**Emery QUARLES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A05–0105–CR–229.

Court of Appeals of Indiana.

Feb. 26, 2002.

Susan D. Rayl, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Appellant, Emery Quarles, was convicted of operating a motor vehicle while his license was suspended for being a habitual traffic violator, a Class D felony.[1] Upon appeal, Quarles presents a single issue for our review: whether the evidence was sufficient to support the conviction.

We affirm.

The facts most favorable to the trial court's judgment reveal that in the early hours of October 9, 1998, Indianapolis Police Officer Jeff Viewegh stopped an automobile driven by Quarles after it had made a turn without signaling. Quarles pulled the automobile into the driveway of a house, and Officer Viewegh approached the vehicle and asked Quarles for his driver's license. Quarles gave his brother's license to Officer Viewegh, who noticed that the photograph on the license was not of Quarles. Upon inquiry by Officer Viewegh, an occupant of the house identified Quarles. Quarles then gave Officer Viewegh his date of birth and social security number, and, based upon this information, Officer Viewegh learned that Quarles did not have a valid driver's license.

Quarles was subsequently charged with operating a motor vehicle while a habitual traffic violator. During a bench trial held on April 20, 1999, a certified copy of Quarles's record from the Indiana Bureau of Motor Vehicles ("BMV") was admitted into evidence without objection. The BMV record revealed the following facts. On July 21, 1997, Quarles was convicted of operating a vehicle while intoxicated ("OWI") as a result of an incident which occurred on August 24, 1996. As a result of this conviction, the BMV sent Quarles a notice of suspension on July 28, 1997, informing him that his license "Will be [sic] suspended as of January 4, 1996[sic]." Exhibit 1. On August 14, 1997, the BMV mailed a letter informing Quarles that, effective September 12, 1997, his driving privileges would be suspended for ten years as a result of his being a habitual traffic violator. Thereafter, on September 8, 1997, the BMV mailed Quarles a notice of suspension stating that on September 6, 1997, his driving privileges had been suspended for one year for failing to provide proof of financial responsibility at the time of an accident or ticket which occurred on August 24, 1996.[2] Finally, on September 15, 1997, Quarles received a "Final Notice of Suspension" from the BMV, stating that, as a result of being a habitual traffic violator, his license had been suspended for ten years, i.e., until September 11, 2007.[3]

At trial, Quarles admitted that he had been driving the automobile and admitted that he knew his license was suspended. However, he denied knowing that the BMV had determined him to be a habitual traffic violator. The trial court found Quarles guilty as charged.

Indiana Code Section 9–30–10–16 reads in pertinent part, "A person who operates a motor vehicle ... [w]hile the person's driving privileges are suspended under

---

1. Ind.Code § 9–30–10–16 (Burns Code Ed. Repl.1997).

2. This apparently refers to the same incident for which Quarles was convicted for OWI.

3. Both the August 14 letter and the September 15 notice appear to refer to the same habitual traffic violator determination. The August letter states that the ten-year suspension will be effective September 12, 1997, and the September 15 notice states that the suspension will remain in effect until September 11, 2007, i.e., ten years from the date mentioned in the August letter.

this chapter ... or ... [i]n violation of restrictions imposed under this chapter ... commits a Class D felony." Our Supreme Court has established that "[t]o obtain convictions for driving while suspended or after being adjudicated an habitual violator, the State need prove what the statutes explicitly provide, (1) the act of driving, and (2) a license suspension or an [habitual traffic violator] adjudication, plus the mens rea we have inferred: (3) that the defendant 'knew or should have known.'" *Stewart v. State*, 721 N.E.2d 876, 880 (Ind.1999).[4]

In the present case, Quarles admitted that he was driving a motor vehicle when stopped by Officer Viewegh, and he does not challenge the validity of the BMV's determination that he was a habitual traffic violator. Instead, Quarles maintains that the State did not prove that he knew or should have known that he had been determined to be a habitual traffic violator. Specifically, Quarles points to the "inconsistencies" in the notices sent to him by the BMV and claims that "it is unlikely that after receiving so may [sic] notices from the BMV that Mr. Quarles paid any attention to information other than that received by Court 15 [i.e., that he had been suspended for his OWI conviction]." Appellant's Brief at 9.

■ Under the version of Section 16 under which Quarles was charged, "the State can prevail when it proves the BMV mailed notices to a driver's last known address, inasmuch as such proof (or the defendant's fault in not providing a newer address) permits a finder of fact to enter a

---

**4.** The *Stewart* court held that, under the version of Section 16 then in effect, the State was not required to prove that the underlying suspension of the defendant's operator's license was, in fact, a valid suspension. 721 N.E.2d at 880. Prior opinions by the Court of Appeals had indicated that proof of a valid suspension was required to obtain a conviction under Section 16. *See Pebley v. State*, 686 N.E.2d 168 (Ind.Ct.App.1997); *Loe v. State*, 654 N.E.2d 1157 (Ind.Ct.App.1995).

In apparent response to the holding of *Stewart*, our General Assembly amended Section 16 in 2000 to read as follows:

"(a) A person who operates a motor vehicle:

(1) while the person's driving privileges are *validly* suspended under this chapter or IC 9–12–2 (repealed July 1, 1991) *and the person knows that the person's driving privileges are suspended;* or

(2) in violation of restrictions imposed under this chapter or IC 9–12–2 (repealed July 1, 1991) and who knows of the existence of the restrictions;

commits a Class D felony.

(b) Service by the bureau of notice of the suspension or restriction of a person's driving privileges under subsection (a)(1) or (a)(2):

(1) in compliance with section 5 of this chapter; and

(2) by first class mail to the person at the last address shown for the person in the bureau's records;

establishes a rebuttable presumption that the person knows that the person's driving privileges are suspended or restricted...."
Ind.Code § 9–30–10–16 (Burns Code Ed. Supp.2001) (emphasis supplied).

Thus, the holding of *Stewart* would appear to have been effectively superceded by the current version of Section 16. And this court so held in *DeSantis v. State*, 760 N.E.2d 641 (Ind.Ct.App.2001) and *Groce v. State, ex rel. Newman*, 757 N.E.2d 694 (Ind.Ct.App.2001). Nevertheless, very recently in *State v. Hammond*, 761 N.E.2d 812 (Ind.2002) the Supreme Court disabused us of that notion holding that:

"The addition of the word 'validly' to the statute does not, therefore, change the holding of *Stewart*. If no challenge has occurred as of the date the driver is charged with driving while suspended, the suspension is valid at the critical time, and the subsequent conviction stands."

Be that as it may, Quarles was charged hereunder the pre-amendment version of Section 16, and he does not challenge the validity of the suspension of his license upon appeal. Therefore, we analyze this case following *Stewart*, as we are required to do.

conviction by inferring the defendant's knowledge." *Stewart,* 721 N.E.2d at 879.[5] As noted above, Quarles received several notices from the BMV informing him that his license had been suspended for various reasons. On August 14 and September 15 of 1997, the BMV informed Quarles that his license had been suspended for ten years as a result of his status as a habitual traffic violator. Quarles's knowledge of his suspension may be inferred from the printout of his driving record introduced into evidence which shows that these suspension notices were mailed to his last known address.[6] *See Nasser v. State,* 727 N.E.2d 1105, 1109 (Ind.Ct.App.2000), *trans. denied.*

■ Neither are we persuaded by Quarles's argument that, due to the various notices sent to him, he could not be expected to know that his license was suspended for being a habitual traffic violator. Quarles received two separate notices informing him of his status as a habitual traffic violator. The notice received on September 8, 1997, did state that Quarles had been suspended for a year and that he would be eligible for reinstatement on September 5, 1998. However, this suspension was a result of an incident which occurred on August 24, 1996, and apparently had nothing to do with the BMV's prior determination of Quarles's habitual traffic violator status. This suspension notice also contained a caveat that, prior to reinstatement, Quarles would be notified of any outstanding reinstatement requirements.

Thus, it did not guarantee reinstatement within one year. Furthermore, one week after the one-year suspension notice was sent, the BMV again informed Quarles of his status as a habitual traffic offender and informed him that his license was suspended for ten years. Thus, despite any inconsistencies in the BMV notices, the trial court could reasonably infer Quarles's knowledge of his habitual traffic violator status. *See Stewart,* 721 N.E.2d at 879; *see also Nasser,* 727 N.E.2d at 1110 (holding that evidence was sufficient to support conviction for driving while suspended despite the fact that BMV sent defendant two suspension notices, both with different suspension dates, because, under either suspension date, defendant's license was suspended on the date of the offense).

In summary, the State established that Quarles was driving a motor vehicle after his license had been suspended as a result of his being determined a habitual traffic violator and that Quarles knew or should have known of the BMV's determination. This is sufficient to support Quarles's conviction.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

---

5. Our Supreme Court in *Hammond, supra,* did not consider the General Assembly's contemporaneous amendment to the provision requiring that the "person knows that the person's driving privileges are suspended." I.C. § 9–30–10–16(b). Prior to that amendment, the statute contained no "knowledge" requirement. However, we need not consider the impact, if any, of this statutory change upon the *Stewart* decision which held that the State need prove only that the driver "knew

or should have known" of the suspension. 721 N.E.2d at 879.

6. Although Quarles's argument assumes that he did receive the notices from the BMV, in a footnote to his brief he denies that he received each notice. However, Quarles makes no further argument in this regard, nor does he claim that the BMV sent the notices to an address other than his last known address.