STATE of Indiana, Appellant–Plaintiff,

v.

Karl D. JACKSON, Appellee–Defendant.

No. 29A02–0610–CR–867.

Court of Appeals of Indiana.

April 20, 2007.

Steve Carter, Attorney General Of Indiana, Cynthia L. Ploughe, Christopher A. Americanos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Lawrence M. Hansen, Hansen Law Firm, LLC, Fishers, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issue* [1]

The State of Indiana appeals from the trial court's judgment of acquittal in favor of Karl D. Jackson, who was charged with operating a vehicle after being adjudged an habitual traffic violator ("OWHTV"), a Class D felony. On appeal, the State raises three issues, which we restate as:

1) whether a defendant charged with OWHTV is required to know that his or her license was suspended because of the HTV status or merely that his or her license was suspended; [2]

2) whether the OWHTV statute requires that the defendant have actual knowledge, or whether mere constructive knowledge is sufficient; and

3) whether the trial court erroneously found that Jackson had rebutted the statutory presumption that he knew his driving privileges had been suspended for being an HTV.

Concluding that the OWHTV statute requires that the defendant have actual

---

1. We heard oral argument in this matter on March 29, 2006, at Franklin College in Franklin, Indiana. We thank counsel for their advocacy, and extend our appreciation to Franklin College for hosting the argument.

2. The State did not raise this issue in its brief, but did so at oral argument.

knowledge that his or her license has been suspended because of the HTV status, and that the trial court acted within its discretion in finding that Jackson rebutted the statutory presumption, we affirm.

### Facts and Procedural History

Sometime in 2003, the BMV determined that Jackson was an HTV.[3] On April 14, 2003, the BMV sent a notice of this determination to Jackson at the last address Jackson had given to the BMV.[4] Jackson testified that he never received this notice, and introduced evidence that on the date the BMV mailed the notice, he was living at a different location. Under Indiana statute, a person holding a driver's license or permit is required to notify the BMV of a change in address.[5] Jackson never informed the BMV that his address had changed.

On January 28, 2005, Matthew Molter, of the Carmel Police Department, stopped a vehicle driven by Jackson. Jackson gave Officer Molter the vehicle's registration and his identification card, and told Officer Molter that his license was suspended. Officer Molter confirmed that Jackson's license was suspended and placed Jackson under arrest.

The State charged Jackson with OWHTV. At trial, the State introduced evidence of Jackson's prior traffic violations, the BMV's determination that Jackson was an HTV, and documents showing that the BMV had mailed a notice of this determination to the address that Jackson had last provided to the BMV. Annette

Page, Director of the BMV's driver improvement and safety responsibility division, testified that these notices contain personal information, and agreed that a notice of an HTV determination is "probably not something that would be forwarded." Transcript at 26.[6] Page also testified that the BMV does not inform license holders that they are required by statute to report a change of address to the BMV. Jackson testified that he never received notice of the BMV's determination of his status as an HTV, and that he had not lived at the address to which the BMV mailed the notice at the time of the mailing. He also testified that he had not notified the BMV of his change in address.

The trial court entered a judgment of acquittal, stating that "the Defendant in this case rebutted that presumption [that he knew his driving privileges were suspended because of his status as an HTV] . . . he was not living at the address [and] he never received notice of his suspension. . . . [T]he State failed to prove the Defendant was operating knowing that he was . . . an habitual traffic violator." Tr. at 39.

The State now appeals the trial court's decision.

### Discussion and Decision

#### I. Nature of the Appeal

▇ Under Indiana statute, the State may appeal a question of law following a defendant's acquittal. Ind.Code § 35–38–4–2; *State v. Lloyd*, 800 N.E.2d 196, 198

---

**3.** The BMV will determine a person to be an HTV if that person has accumulated a certain number of traffic violations. The number of violations required depends on the violations' severity. Ind.Code § 9–30–10–4.

**4.** Upon determining that a person is an HTV, the BMV is required suspend that person's license for either five years, ten years, or for life, depending on the number and nature of

underlying violations, and to mail notice of such determination and the resulting suspension. Ind.Code § 9–30–10–5.

**5.** Ind.Code § 9–24–13–4.

**6.** At oral argument, the State conceded that the BMV stamps envelopes containing HTV notifications with instructions not to forward.

(Ind.Ct.App.2003). However, if we reverse a trial court's judgment of acquittal, the State is barred, on double jeopardy grounds, from trying the defendant again. *State v. Casada*, 825 N.E.2d 936, 940 (Ind. Ct.App.2005). Even though the issues in these cases are therefore moot, we address the merits in these situations in order to "provide guidance to the trial courts in future cases." *Lloyd*, 800 N.E.2d at 198.

## II. The Trial Court's Judgment

### A. Interpretation of Indiana Code section 9–30–10–16

 Our supreme court has summarized our approach to interpreting penal statutes:

Penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. At the same time, however, statutes should not be narrowed so much as to exclude cases they would fairly cover. Also, we assume that the language in a statute was used intentionally and that every word should be given effect and meaning. We seek to give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice. And statutes concerning the same subject matter must be read together to harmonize and give effect to each.

*Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005) (citations omitted). With these principles in mind, we will address the OWHTV statute.

This statute states: "A person who operates a motor vehicle ... while the person's driving privileges are validly suspended under this [HTV] chapter ... and the person knows that the person's driving privileges are suspended ... commits a Class D felony." Ind.Code § 9–30–10–16(a). The statute also states: "Service by

the bureau of notice of the suspension ... by first class mail to the person at the last address shown for the person in the bureau's records ... establishes a rebuttable presumption that the person knows that the person's driving privileges are suspended or restricted." Ind.Code § 9–30–10–16(b). Prior to 2000, this statute read: "A person who operates a motor vehicle ... while the person's driving privileges are suspended under [the HTV] chapter ... commits a Class D felony." *See State v. Hammond*, 761 N.E.2d 812, 815 n. 4 (Ind.2002).

Our supreme court interpreted this pre–2000 statute to require the State to prove: "(1) the act of driving, and (2) a license suspension or an HTV adjudication, *plus* the mens rea we have inferred: (3) that the defendant 'knew or should have known.'" *Stewart v. State*, 721 N.E.2d 876, 879 (Ind.1999) (emphasis in original). However, the *Stewart* holding does not address two issues germane to this case: (1) whether the State must prove that the defendant knew that his license was merely suspended, or that the defendant knew specifically of his status as an HTV; and (2) whether the amendment to the statute superceded the constructive knowledge element read in by the *Stewart* court. We will address each in turn.

### 1. Does an Offender Need to Know of His or Her Status as an HTV?

 No court has directly addressed the situation presented in this case; Jackson admits he knew his license was suspended, but argues that he did not know it was suspended because of his status as an HTV. Previous cases explicitly state that an element of the statute is the defendant's knowledge of his status as an HTV. *See Brown v. State*, 677 N.E.2d 517, 518 (Ind.1997); *Cruite v. State*, 641 N.E.2d 1264, 1265 (Ind.1994); *Denton v. State*, 805

N.E.2d 852, 856 n. 4 (Ind.Ct.App.2004), *trans. denied; Rowe v. State,* 717 N.E.2d 1262, 1268 (Ind.Ct.App.1999); *Wilson v. State,* 707 N.E.2d 318, 320 (Ind.Ct.App. 1999). Other cases do not explicitly indicate that the State must prove the defendant knew of his or her status as an HTV, but instead indicate that the State must prove the defendant knew merely that his or her license was suspended. *See Groce v. State,* 778 N.E.2d 785, 786 (Ind.2002); *Fennell v. State,* 698 N.E.2d 823, 825 (Ind. Ct.App.1998); *Johnson v. State,* 698 N.E.2d 821, 822 (Ind.Ct.App.1998). Our supreme court, when directly addressing the mens rea required under the statute, did not clearly state whether or not a defendant needed to know that his license was suspended because of his status as an HTV or merely that his license was suspended. *See Stewart,* 721 N.E.2d at 879. In its discussion, the *Stewart* court quoted language from cases explicitly stating defendants must have known of their status as an HTV, and other language from cases that stated defendants must have known merely that their licenses were suspended. *See id.* at 878.

The plain language of the statute is ambiguous as to whether the State must show that defendants know of their status as an HTV, or know merely that their license is suspended. On the one hand, the statute states that the defendant commits the offense by driving while privileges are suspended and the person "knows that the person's driving privileges are suspended." Ind.Code § 9–30–10–16(a)(1). This language does not state that the defendant must know why the privileges are suspended, but merely that the defendant must know the privileges are suspended.

However, for the rebuttable presumption of knowledge to arise, the State must serve the notice "in compliance with section 5 of this chapter." Ind.Code § 9–30–

10–16(b)(1). Under section 5, the BMV must give notice that the person's driving privileges are suspended "because the person is a habitual violator." Ind.Code § 9–30–10–5(a). Also, the provision allowing for the rebuttable presumption states that for the presumption to arise, the State must show "[s]ervice by the bureau of notice of the suspension or restriction of a person's driving privileges *under subsection (a)(1) or (a)(2)."* Ind.Code § 9–30–10–16(b) (emphasis added). Although subsections (a)(1) and (a)(2) do not, in themselves, provide the basis for the underlying suspension, the subsections do require that the person's license be suspended "under [the habitual traffic violator] chapter." Ind.Code § 9–30–10–16(a)(1), (2). Therefore, the language establishing the rebuttable presumption seems to indicate that for the presumption to arise, the BMV must have given the defendant proper notice of that person's status as an HTV. It would create an inconsistent result to interpret the statute to require that the State must prove that the defendant merely knew his or her license was suspended, but that the rebuttable presumption arises only upon proof of proper notice of the defendant's status as an HTV, and not upon proof of mere notice of a suspension.

These considerations, along with the requirement that we construe penal statutes strictly against the State and resolve ambiguities in favor of the accused, lead us to hold that the OWHTV statute requires that the State prove the defendant knew his or her license was suspended because of that person's status as an HTV.

### 2. Does the Amended Statute Require Actual Knowledge?

█ Jackson argues that when the legislature amended the statute, it meant to dispense with the constructive knowledge element as stated in *Stewart,* 721 N.E.2d at 879. Our supreme court has held that

the legislature's addition of the term "validly" to the statute did not affect its holding in *Stewart* that an incomplete or untimely notice of one's HTV status does not require reversal of a conviction for OWHTV. *Hammond*, 761 N.E.2d at 815. However, neither *Hammond* nor any other case decided subsequent to the legislature's amendment of the statute has directly addressed the effect of the amendment on *Stewart's* holding that the State must show that the defendant knew or should have known of the suspension. *See Quarles v. State*, 763 N.E.2d 1020, 1023 n. 5 (Ind.Ct.App.2002) (recognizing that the *Hammond* court did not address this amendment to the statute).

Jackson argues that had the legislature meant to adopt the mens rea as announced in *Stewart*, it would have used the phrase "knows or should know" instead of "knows." Although Indiana does not record its legislative history, we glean insight into the legislature's intent by looking to other statutes. In support of Jackson's argument, we note that the legislature uses the phrase "knows or should know" in numerous criminal statutes. *See, e.g.,* Ind. Code §§ 35–46–1–8(b)(1)(A)(i) (Class C felony when person over 21 gives alcohol to someone he "knew or reasonably should have known" was less than eighteen), 35–43–4–2.7(e)(2) (Class D felony to occupy a motor vehicle without authorization when one "knew or should have known that a person intended to use the motor vehicle in the commission of a crime"), 35–46–1–9.5 (woman commits adoption deception by claiming she is pregnant and profiting from adoption related expenses when she

"knows or should have known that [she] is not pregnant"). Also, Title 9, of which the OWHTV statute is a part, contains four statutes that indicate knowledge is distinct from constructive knowledge. *See* Ind. Code §§ 9–22–3–30 (using the language "knows or should reasonably know"), 9–22–5–16 (same), 9–23–3–6 (same), 9–31–2–27(3) (using language "knowingly or having reason to believe"). On the other hand, the legislature has also specifically used the term "actual knowledge" in other statutes. *See* Ind.Code §§ 7.1–2–6–1(b) (plaintiff in action to abate public nuisance "must prove that the owner of the business had actual knowledge of the actions alleged to constitute a nuisance"), 16–36–4–12 ("No civil or criminal liability is imposed upon a person for failure to act upon a revocation [of a living will] unless the person had actual knowledge of the revocation"), 35–45–15–5(c)(2) (it is a defense to money laundering if accused is an attorney who received funds without actual knowledge that they were derived from criminal activity).

Although neither the HTV chapter, nor any other part of Title 9 defines "know," the criminal code contains an explanation of culpability stating: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2. Under this definition, the State would need to show that Jackson was aware of a high probability that his driver's license was suspended for being an HTV. This definition imposes a different requirement than showing mere constructive knowledge.[7]

---

**7.** Other sections of the Indiana Code define knowledge as something more than constructive knowledge. *See* Ind.Code §§ 23–4–1–3(1) (under Uniform Partnership Act, "[a] person has 'knowledge' of a fact ... not only when he has actual knowledge thereof, but also

when he has knowledge of such other facts as in the circumstances shows bad faith"), 24–9–2–7(b) ("For purposes of this [deceptive act relating to home loan practices] section, 'knowingly' means having actual knowledge at the time of the transaction."), 26–1–1–

Another persuasive reason to find that the legislature dispensed with constructive knowledge comes from within the OWHTV statute. Along with the legislature's addition of the requirement that the defendant know of his or her suspension, it added a provision providing for a rebuttable presumption of knowledge if the BMV mails a valid notice to the offender's last known address. Saying that such notification establishes a rebuttable presumption of knowledge is fundamentally different than saying that such notification establishes constructive knowledge. By its very terms, the rebuttable presumption of knowledge may be rebutted by contrary evidence of lack of knowledge. On the other hand, under the constructive knowledge element, once the State has proven that the BMV mailed a proper notice to the offender's last known address, the defendant's evidence going toward knowledge is irrelevant; that is, proper notification *conclusively*, and not rebuttably, satisfies the mens rea element.[8] Not only is the rebuttable presumption different from reading in a requirement of constructive knowledge, but also, had the legislature intended that its inclusion of the knowledge requirement in subsection (a) not dispense with constructive knowledge, it would have been unnecessary for the legislature to amend the statute to include the rebuttable presumption in subsection (b).

The State argues that such an interpretation makes it virtually impossible to convict a defendant under the OWHTV stat-ute. However, we disagree that such knowledge will be nearly as difficult to prove as the State suggests. In order to demonstrate a defendant's knowledge of his or her HTV status, the State need not introduce "direct and positive evidence." *See Johnson v. State*, 837 N.E.2d 209, 214 (Ind.Ct.App.2005), *trans. denied.* Instead, "[t]he element of intent may be proven by circumstantial evidence alone, and it is well-established that knowledge and intent may be inferred from the facts and circumstances of each case." *Lykins v. State*, 726 N.E.2d 1265, 1270 (Ind.Ct.App.2000). Although we need not positively state what would constitute sufficient circumstantial evidence to demonstrate knowledge,[9] we note that were the BMV to send HTV notices via certified mail, the State would be able to introduce evidence that the defendant, or someone living at the defendant's residence, received the HTV notification. Also, evidence that the BMV had informed a defendant of the duty to inform the BMV of a change in address might tend to indicate that a defendant was intentionally keeping the BMV in the dark as to the defendant's current address. Although actual knowledge may be more difficult to prove than constructive knowledge, it is the legislature's prerogative to set the bar higher in criminal cases, and the State must adjust accordingly.

Based on the considerations discussed above, we conclude that when the legislature amended the OWHTV statute, it altered the holding of *Stewart.* Under the

---

201(25) (under Indiana Uniform Commercial Code, "[a] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it"); *see also* Ind.Code of Judicial Conduct, Terminology (" 'Knowingly,' 'knowledge,' 'known' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.").

**8.** This is not to say, of course, that the defendant could not present evidence that the BMV mailed improper notification, or mailed the notification to an address other than the last one the defendant provided to the BMV.

**9.** Similarly, we need not determine whether the evidence in this case would have been sufficient to support a conviction under the OWHTV statute.

amended statute, in order to convict a defendant under the OWHTV statute, the State must prove that the defendant had actual knowledge of his or her suspension based on his or her status as an HTV.

### B. Trial Court's Finding that Jackson Rebutted the Presumption

#### 1. Presumptions In Criminal Cases

■ Jackson does not dispute that the BMV mailed notice of his HTV status to the most recent address he had provided to the BMV. Therefore, the State established the rebuttable presumption of Jackson's knowledge. To rebut this presumption, Jackson presented the following: (1) evidence that he was not living at the address to which the BMV mailed the notice; (2) evidence that the BMV stamps HTV notices "Do Not Forward," tr. at 24, and (3) evidence that the BMV does not inform license holders of their duty to inform the BMV of address changes.

■ Mandatory presumptions in criminal cases are unconstitutional if they deprive the defendant of due process by relieving the State of its burden of persuasion on an element of an offense. *Francis v. Franklin,* 471 U.S. 307, 314, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *McCorker v. State,* 797 N.E.2d 257, 265 (Ind.2003). Here, Jackson's knowledge of his suspension is clearly an element of the offense, so the presumption of his knowledge, in order to be constitutional, must be permissive. *See Thompson v. State,* 646 N.E.2d 687, 692 (Ind.Ct.App. 1995), *trans. denied* ("[C]onstitutional concerns dictate that a presumption in a criminal case must be both rebuttable and permissive.").

"[E]ven in a case in which the defendant does not rebut or attempt to rebut the presumption, the trier of fact is not compelled to find the presumed fact.... The jury is free to accept the presumption or not, just as it is free to do with other evidence." *Hall v. State,* 560 N.E.2d 561, 563 (Ind.Ct.App.1990). Because Jackson presented evidence that he did not have knowledge of his HTV status, and because the trial court was not required to find the presumed fact, it is difficult to see how the trial court acted improperly in finding that Jackson successfully rebutted the presumption.

■ The trial court found that Jackson did not have knowledge of his HTV status.[10] As an appellate court, we would not disturb this verdict unless it was unsupported by the evidence and reasonable inferences drawn therefrom. *Seketa v. State,* 817 N.E.2d 690, 696 (Ind.Ct.App. 2004). The fact that the BMV does not forward its HTV notifications, along with the fact that Jackson was not living at the address to which the BMV sent the notification constitutes sufficient evidence for the trial court to have found that Jackson rebutted the presumption.

#### 2. Statutory Requirement to Report Change of Address to the BMV

■ Under Indiana statute, "[i]f ... an individual holding a license or permit issued under this article changes the address shown on the license or permit application ... the licensee or permittee shall immediately notify the bureau in writing of the licensee's or permittee's old and new address." Ind.Code § 9–24–13–4.[11] Under this statute, Jackson was required to

---

**10.** The trial court did not include findings of fact in its order, but, when announcing its decision stated that it found the State had failed to prove Jackson's knowledge. Tr. at 39.

**11.** This statute does not define "immediately," but Jackson had been living at his new residence for roughly ten months at the time he was arrested, and makes no argument that he was in compliance with the statute.

keep the BMV informed of his current address. *Fields v. State,* 679 N.E.2d 898, 900–01 (Ind.1997).

■ We recognize that "statutes concerning the same subject matter must be read together to harmonize and give effect to each." *Merritt,* 829 N.E.2d at 475. The OWHTV statute is a penal statute, which is "to be strictly construed against the State to avoid enlarging [it] by intendment or implication beyond the fair meaning of the language used." *State v. Gibbs,* 769 N.E.2d 594, 596 (Ind.Ct.App.2002), *trans. denied.*

The State argues that unless non-compliance with the requirement to notify the BMV of a change of address forecloses a defendant's ability to rebut the presumption of knowledge, "any driver who suspects his license may be suspended can stay ahead of any suspension notice by simply moving to another address without providing the statutorily required notice to the BMV." Appellant's Brief at 6. Previous courts have also recognized that policy considerations weigh against allowing defendants to escape criminal liability based in part on their non-compliance with the notification statute:

> Furthermore, Roberts recently had moved. This event would require him to notify the Bureau of his new address. IC 9–1–4–36. This again he did not do. The evidence shows that Roberts has himself disabled the Bureau from giving proper notice. He has demonstrated no concern about whether or not the Bureau had his correct address. Under these circumstances he is in no position to complain about lack of notice. His argument would place a premium on deception. This we will not accept.

*Roberts v. State,* 182 Ind.App. 430, 431, 395 N.E.2d 802, 803 (Ind.Ct.App.1979), *overruled on other grounds by State v. Keihn,* 542 N.E.2d 963, 968 (Ind.1989). Our supreme court has indicated that the BMV "may rely on the address which was last provided by the driver. . . . [T]he driver is required to provide it with an updated address. If the driver has not, the Bureau may assume the address last given is the correct address to which to send a notice." *Brown v. State,* 677 N.E.2d 517, 519 (Ind. 1997) (determining an offender's "last known address," to which the BMV is required to send notice of an HTV suspension under Indiana Code section 9–30–10–5).[12]

When considering the effect of Jackson's non-compliance, we should note that in cases where the BMV has failed to comply with the statutory requirements for notification of HTV status, we have held that this non-compliance has no effect upon the defendant's guilt for driving while suspended for being an HTV. *See Hammond,* 761 N.E.2d at 815 ("[A]n untimely or incomplete [HTV] suspension notice does not justify automatic reversal of the suspension [for driving while an HTV]."); *Stewart,* 721 N.E.2d at 880 ("While defects in the administrative process may warrant relief under administrative law, it is not the province of criminal proceedings to correct such errors."). As we have previously noted, "[i]n light of these cases, the State need only show that the defendant had been driving and that he knew he was an HTV, thereby nullifying the notice requirements set forth in Indiana Code section 9–30–10–5." *Denton,* 805 N.E.2d at 856 n. 4. Besides policy rationale, the State has put forth no explanation why similar

**12.** As Jackson points out, our supreme court in *Brown* stated in a footnote: "Although we presume that the Bureau notifies drivers of this requirement [to notify the BMV of a change in address] when they apply for a license, the record is silent on this particular point." *Id.* at 518 n. 1. Here, the record is not silent on this point, as evidence indicates that the BMV does not inform drivers of this requirement.

logic should not apply to a defendant's non-compliance with this other related statute.

We have previously noted that "it is just as important to recognize what a statute does not say as it is to recognize what it does say," and that we will "not read into a statute that which is not the expressed intent of the legislature." *Herron v. State*, 729 N.E.2d 1008, 1010 (Ind. Ct.App.2000), *trans. denied.* The legislature has determined that the failure to notify the BMV of a change in an address constitutes a Class C infraction. Ind.Code § 9–24–13–5. No jail sentence may be ordered for such infractions, and instead a judgment of only up to $500 may be issued. Ind.Code § 34–28–5–4. Also, the OWHTV statute makes no reference to a licensee's duty to inform the BMV of a change in address, other than that the BMV's act of mailing notification to the defendant's last known address establishes a rebuttable presumption of the defendant's knowledge, and does not indicate that such a failure has any effect on the offender's criminal liability.

Finally, as stated above, presumptions in criminal statutes are constitutional only when they are permissive and rebuttable. The State's argument seems to boil down to a claim that a defendant's non-compliance with the statute requiring licensees to notify the BMV of a change in address renders the OWHTV statute's presumption unrebuttable.[13] Such a rule would raise constitutional concerns, as the State would therefore be relieved of the burden of persuasion as to the defendant's knowledge, which is a clear statutory element of the offense under the amended statute.

We conclude that a defendant's failure to notify the BMV of a change in address does not leave that defendant without the ability to rebut the statutory presumption of knowledge.[14]

### Conclusion

We conclude that the OWHTV statute requires that the defendant have actual knowledge that his or her license has been suspended because that person has been determined to be an HTV. We further hold that the trial court did not abuse its discretion in finding that Jackson rebutted this presumption, notwithstanding the fact that Jackson failed to comply with the statutory requirement that he notify the BMV of a change in address.

Affirmed.

BAKER, C.J., and DARDEN, J., concur.

---

13. We recognize that at oral argument, the State was able to identify three situations in which it believed one could fail to notify the BMV of a change of address and still rebut the presumption. These situations were: 1) an act of God has made notification impossible; 2) the driver was in a coma during the change of address, and was therefore unaware of the change; and 3) the driver's address changed while the driver was serving in the military, the driver was unable to inform the BMV of the change, and the driver was arrested for OWHTV while driving home from the airport after returning from service. Although we appreciate the State's creativity, despite the possibility that one could rebut the presumption in these unlikely scenarios, we still conclude that the State's proposed rule would result in an impermissible unrebuttable presumption.

14. We note that if the general assembly is not comfortable with this result, it is free to increase the penalty for failing to notify the BMV of a change in address, or re-visit the statutory requirement that a defendant have actual knowledge that his or her license has been suspended for the specific reason that that person has been determined to be an HTV.