**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 15 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES WASHINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A05-1312-CR-626 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1212-MR-2

**July 15, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant/Cross-Appellee-Defendant, James Washington (Washington), appeals his conviction for Count I, murder, Indiana Code section 35-42-1-1.

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

Washington raises two issues on appeal which we restate as follows:

(1) Whether the State produced sufficient evidence to rebut Washington's self-defense claim; and

(2) Whether Washington's sentence was inappropriate.

The State raises one issue on cross appeal which we restate as: Whether the trial court erred by concluding robbery is a lesser included offense of murder and failing to enter judgment for the robbery offense pursuant to Indiana Code Section 35-38-1-6.

## FACTS AND PROCEDURAL HISTORY

On December 1, 2012, Washington met Robert Eader (Eader) through Eader's neighbor. The next day, Washington went over to Eader's apartment during the day to sell him cocaine. After the transaction was complete, Washington left Eader's apartment but later returned around 11:30 p.m. with more cocaine, and accompanied by his girlfriend, Dana Eisenbach (Eisenbach). Washington sold Eader more than $300 worth of cocaine. Eader paid Washington, and he also shared some of the cocaine with Washington and Eisenbach. Before Washington left Eader's apartment, Eader asked him if he could front

2

him more cocaine. Washington agreed, and he gave Eader an additional amount worth $40 on the understanding that Eader would pay him back later that night when he returned with even more drugs.

In the early morning of December 3, 2012, Eisenbach texted Eader and offered to sell him more crack cocaine. At around 4:00 a.m., Washington and Eisenbach drove back to Eader's apartment. Eisenbach waited in the car as Washington knocked on Eader's front door. Once Washington was inside Eader's apartment, Eader locked the door behind him. Eader had the money in his left hand and he sat down at small table. Washington then informed Eader that he did not have any more drugs to sell, but was there to collect his $40 debt. This upset Eader, so he attempted to push Washington out of his apartment. Washington pushed back and told Eader that he would not leave the apartment until he got paid.

A struggle ensued where Eader, who weighs 180 pounds, started throwing jabs at Washington, who weighs 330 pounds, and is twenty years his junior. In the process, Washington managed to grab Eader's right arm. With his free hand, Washington retrieved a knife from his pocket, and slashed Eader's throat. Washington then pushed Eader toward the wall. Fighting for his life, Eader used his left arm to strike back at Washington, but Washington was too strong for him. Washington slashed Eader's throat a second time and stabbed him in the chest. Eader slumped and fell over on his left side. Washington did not retreat from the fight, instead, he knelt down, held Eader's right arm, and slit Eader's throat for a third time, this time severing Eader's carotid artery. Thereafter, Washington grabbed

3

some of Eader's money that had been dropped on the floor and went to the kitchen to wash his hands and pocket knife.

Meanwhile, a neighbor, Harold Lemon (Lemon) heard the commotion in Eader's apartment. He decided to go up to Eader's apartment to check up on him but found the front door locked. At the same time, Lemon noticed an unfamiliar vehicle parked in the parking lot. As Lemon went downstairs to get the description and license plate number, he saw a man he knew as Scuttles, later identified as Washington, exiting Eader's apartment, getting into the vehicle, and driving off. Lemon called 911 and reported what he had witnessed. Thereafter, Lemon returned to Eader's apartment. This time the door was unlocked, and when he looked inside, he saw Eader lying on the floor covered in blood. Eader died as a result of the stab wounds. On the same day, Washington and Eisenbach drove to Missouri. Along the way, Washington threw his knife on the interstate and dumped his clothes at a gas station

On December 5, 2012, Washington and Eisenbach resolved to return to Indiana because Washington wanted to turn himself in. Before turning himself in at the Clark County Jail in Jeffersonville, Indiana, Washington went to buy marijuana. When he arrived at the jail, Washington learned that there was no arrest warrant issued, so he and Eisenbach left. However, on the same day, the Jefferson Police Department issued an alert through dispatch to look for a vehicle matching Washington's. At approximately 5:30 a.m., Officer Robert Grinestaff of the Jefferson Police Department (Officer Grinestaff) was on patrol when he saw a vehicle matching Washington's license plate. Officer Grinestaff called for

4

backup and the officers surrounded Washington's vehicle and subsequently arrested Washington and Eisenbach.

On December 6, 2012, the State filed an Information charging Washington with Count I, murder, Ind. Code § 35-42-1-1, and Count II, robbery, a Class B felony, I.C. § 35-42-5-1.  A jury trial was held from October 15, 2013, through October 18, 2013.  At the close of the evidence, the jury returned a guilty verdict on both Counts.  On November 18, 2013, the trial court sentenced Washington to sixty-five years due to aggravating circumstances—his criminal history and the nature of the crime.  The trial court did not sentence Washington on the robbery conviction because it considered the robbery conviction to be a lesser included offense of murder.

Washington now appeals.  Additional information will be provided as necessary.

DISCUSSION AND DECISION

APPEAL

I. *Rebutting Self-Defense Claim*

Washington argues that there was insufficient evidence to support his murder conviction because the evidence supports the finding that he acted in self-defense.  A valid claim of self-defense is a legal justification for an otherwise criminal act.  *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind. 1997).  The defense is defined in Ind. Code § 35-41-3-2(a):  "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

When a defendant raises a claim of self-defense, he is required to show that: 1) he was in a place where he had a right to be; 2) he acted without fault; and 3) he had a reasonable fear of death or great bodily harm. I.C § 35-41-3-2. Whether a defendant acted in self-defense is generally a question of fact which is entitled to considerable deference upon appellate review. *Taylor v. State*, 710 N.E.2d 921, 924 (Ind. 1999). "A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the State beyond a reasonable doubt." *Id*.

The issue on appellate review is typically framed as whether the State presented sufficient evidence to support a finding that at least one of the elements of the defendant's self-defense claim was negated. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id*. We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the judgment will not be disturbed. *Id*.

In the instant case, Washington characterizes Eader as the aggressor. In his self-serving testimony, Washington stated that he was in reasonable fear of death or bodily harm since he knew Eader was "a veteran" and he knew soldiers had been trained to "actually kill people with or without a weapon." (Transcript p. 358). Washington's self-defense claim however fails for several reasons. At trial, Washington testified that he had no intention of leaving Eader's apartment until he received his payment. When Eader tried to push him out

of his apartment, Washington pushed him back and a scuffle ensued. Eader was the initial aggressor since he was the first to throw a punch at Washington. However, Washington's claim of self-defense was overcome by his subsequent actions. The record reveals that Washington and Eader were the same height, however, Washington was twice as heavy, and twenty years younger than Eader. Instead of punching, Washington pulled out a knife, restrained Eader by holding his arm, and repeatedly slashed Eader's throat and chest. The fact that Eader was the initial aggressor is not dispositive as to whether Washington's use of deadly force was a reasonable response. Although Washington was in a place where he had the right to be, did not provoke the violence, and might have had a reasonable fear of death or great bodily harm, the moment he took out his knife at the fist-fight and started using it, he was no longer using reasonable force. *See* I.C § 35-41-3-2(a).

Because there existed sufficient evidence from which the jury could reasonably find that Washington did not validly act in self-defense, we find that State sufficiently rebutted the self-defense claim, and we find no reason to disturb the guilty verdict.

## II. *Inappropriate Sentence*

Lastly, Washington contends that the sentence imposed is inappropriate based on the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.

2006).  "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter."  *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).  Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case.  *Id*.

The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed.  *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012).  The sentencing range for murder runs from forty-five to sixty-five years, with a statutory advisory sentence of fifty-five years.  Ind. Code § 35-50-2-3(a).  Here, the trial court sentenced Washington to sixty-five years due to aggravating circumstances.  In total, Washington was sentenced to sixty-five years in the Indiana Department of Correction.

Washington argues that "details surrounding most murders can be expected to be violent as they all end with the loss of life.  [But] [t]here was no evidence to suggest [he] made any efforts to torture Eader or otherwise subject him to extreme pain over a prolonged period of time."  (Appellant's Br. p. 15).  We strongly disagree.  With respect to the nature of the offense, though the ordeal did not last long, the evidence shows the murder was committed in a most heinous manner.  On the night in question, Washington went over to Eader's apartment to collect his payment.  When Eader refused to pay him, instead of wrestling with him, he took out his knife, slashed Eader's throat three times, and stabbed him in the chest only for a *$40 debt*.

As for Washington's character, he points out that his "criminal history [is] devoid of any violent acts." (Appellant's Br. p. 16). Though Washington had never been convicted of violent crimes, he had multiple convictions for possession of marijuana since the year 2000. In addition, Washington committed the instant offenses while on probation. At trial, Washington admitted that he was a user and a dealer of drugs. Although Washington was enraged by Eader's refusal to pay him his debt, there was no reason for him to take his life. Washington's criminal history does not suggest that he has led a law abiding life and it purely demonstrates a dedication to a criminal lifestyle which indeed reflects poorly on his character.

Accordingly, under the facts and circumstances before us, and giving proper deference to the trial court's sentencing discretion, we cannot conclude that the maximum sentence was inappropriate in this case.

## CROSS APPEAL

On cross appeal, the State argues that the trial court erred when it failed to enter a judgment of conviction for the Class B felony robbery charge. In its sentencing Order, the trial court stated:

> It appears from the record in this case, [] the same evidence was used to support the robbery conviction and the murder conviction. This [c]ourt orders that, to the extent that the CCS reflects, two different convictions, it should be corrected. The [c]ourt finds that the robbery conviction merges into the murder conviction and that is consistent with the nature and tenor of Indiana Code [section] 35-38-1-6. Judgment for the conviction of murder is confirmed and entered only.

(Appellant's App. p. 217).

9

## I. *Indiana Code Section 35-38-1-6*

"Indiana Code § 35-38-1-6 reinforces [the rule in Indiana's Double Jeopardy Clause], forbidding a trial court from sentencing a defendant for an offense and a lesser-included offense charged in separate counts." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001). Ind. Code § 35-38-1-6 provides that "[w]henever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." I. C. § 35-38-1-6. Included offense means an offense that

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

I. C. § 35-41-1-16. "A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser." *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind. Ct. App. 2002), *trans. denied.* "If each offense is established by proof of an element not contained in the other, Indiana Code § 35-38-1-6 does not preclude conviction and sentence for both offenses." *Ingram v. State*, 718 N.E.2d 379, 381 (Ind. 1999). Also, "[i]f the evidence indicates that one crime is independent of another crime, it is not an included offense." *Wilhelmus v. State*, 824 N.E.2d 405, 416 (Ind. Ct. App. 2005) (relying on *Ingram*, 718 N.E.2d at 381). Thus, whether an offense is

included in another within the meaning of I. C. § 35-38-1-6 requires careful examination of the facts and circumstances of each particular case. *See Iddings*, 772 N.E.2d at 1017.

We note that in order to prove the offense of murder, the State was required to prove beyond a reasonable doubt that Washington knowingly killed Eader. *See* I. C. § 35-42-1-1(1). Whereas to prove the charge of robbery, as a Class B felony, the State was required to show beyond a reasonable doubt that Washington knowingly took Eader's property while armed. *See* I. C. § 35-42-5-1(1). It is clear that each offense required proof of separate facts which the other does not: Murder requires killing of another, whereas Class B felony robbery requires property to be taken.

Also as stated in *Wilhelmus,* the State presented evidence to indicate that the charge of murder was independent from the Class B felony robbery charge. Even though the jury may have relied on the presence of the knife to establish that Washington was armed with a deadly weapon when he took Eader's money, there was separate evidence to show that Washington knowingly killed Eader. At trial, evidence was presented that Washington slashed Eader's throat three times and stabbed him in the chest. After killing him, Washington committed another criminal act, that is, while armed with a knife, he knowingly took Eader's money.

Based on the foregoing, we find that the evidence presented by the State reasonably leads us to the conclusion that the Class B felony robbery was not a lesser included offense of the greater offense of murder. It was possible to commit the greater offense of murder without first committing robbery. In this regard, we find that Washington committed two

independent offenses which may be separately punished without offending Ind. Code § 35-38-1-6.

For these reasons, we remand to this case to trial court with instructions to enter judgment of conviction for the Class B felony robbery, and to sentence accordingly.

## CONCLUSION

Based on the foregoing, we conclude that (1) there was sufficient evidence to rebut Washington's claim of self-defense; (2) Washington's sentence was appropriate; and (3) the trial court erred for not entering judgment of conviction for the Class B felony robbery conviction. We therefore remand with instruction that the trial court enters judgment of conviction for the Class B felony robbery.

Affirmed in part, reversed in part and remanded with instructions.

ROBB, J. and BRADFORD, J. concur